HALE *against* JAMES.

Where land is aliened by the husband, the widow's *dower* is to be ta-
ken according to the value of the land, at the time of alienation.
If the husband mortgage the land, but continue in possession, and
afterwards release the equity of redemption to the mortgagee, the
time of the release of the equity of redemption, is to be deemed
the period of alienation, at which the value is to be taken, and
which is to be estimated without regard to the subsequent improve-
ments made by the purchaser.
Where it is agreed between the widow and the tenant, that he shall
allow her a yearly sum, instead of having the dower assigned to
her according to law, the *interest* of one third of the value of the
premises, at the time of alienation, is the proper measure of the
annuity. But where the house and buildings, on the land, consti-
tuted the principal value of the premises, a deduction of *one per
cent.* was allowed, as a compensation to the tenant, on account of
necessary repairs, and the risk of loss by fire.
On a bill for dower, *costs* are not allowed to the dowress, if there has
been no vexation, or undue hindrance, on the part of the defendant,
to her claim.

*August 15th.*  DANIEL HALE, being seised of a house and lot in
*Albany*, on the 8th of *July*, 1814, mortgaged the same to
the defendant; but the plaintiff (then the wife of *D. H.*)
did not join in the mortgage. On the 24th of *March*,
1817, *D. H.* being largely indebted, released and convey-
ed the premises to the defendant, in fee, for the considera-
tion, expressed in the deed, of 12,500 dollars. The de-
fendant took possession of the premises in *May*, 1819; and
*D. H.* died *September* 3, 1821, leaving the plaintiff his
widow. On the 6th of *December*, 1821, the plaintiff filed
her bill against the defendant, *praying* that her dower in
the premises might be assigned to her according to law, or
that the defendant be decreed to pay her an adequate year-
ly sum, at such periods, and to be secured in such manner,

as the Court might direct; and the defendant to pay the plaintiff her costs.

The defendant, in his answer, filed *February* 1, 1822, admitted the facts above stated, and accepted the offer of the plaintiff, to be allowed a yearly sum, in lieu of dower; but he submitted, that such sum should be estimated according to the value of the premises at the time of the death of the husband.

Witnesses were examined, as to the value of the premises, on the 8th of *July*, 1814, the 24th of *March*, 1817, and *September* 3, 1821; and the average of their several estimates of the value, exclusive of subsequent improvements, was, for the first period, 9,600 dollars; for the second, 7,333 dollars; and, for the third, 6,166 dollars; and the average of their estimates of the yearly rent, was 275 dollars.

*P. J. Munro*, for the plaintiff.

*E. Wilkes*, for the defendant.

THE CHANCELLOR. The main point in the case is, at what time the value of the premises is to be computed. The plaintiff contends, that the value is to be estimated at the time of the alienation of the premises by her husband to the defendant, by way of mortgage, on the 8th of *July*, 1814; and if not at that time, then at the time of the release of the equity of redemption, on the 24th of *March*, 1817. The defendant insists, that the value of the premises depreciated between the last period and the death of the husband, on the 3d of *September*, 1821, and that the value ought to be taken as existing at his death.

It was declared by the Supreme Court, in *Humphrey* v. *Phinney*, (2 *Johns. Rep.* 484.) to be the rule of law, that the widow was not entitled to dower, according to the improved value of the land, in case of alienation by the

1822.

HALE
v.
JAMES.

*Where the husband alienes land, the widow's dower is taken according to the value at the time of alienation.*

husband, but must take her dower according to the value at the time of the alienation. This was the old doctrine of the common law, and the case in 17 *H.* III., is cited in *Fitz. Ab.* tit. *Dower,* s. 192. for the rule, that the wife shall have her dower, without the improvements made by the purchaser from the husband. So, in *Perkins,* tit. *Dower,* s. 328. referring to the same place in *Fitzherbert,* it is stated, that if the husband enfeoff a stranger, who improves and makes the land more valuable by the year, the wife shall not have her dower, " but according to the value it was at *in the time of the husband.*" Again, the rule is stated by Sir *Matthew Hale* to be, that the heir is not bound to warrant, except according to the value, as it was " *at the time of the feoffment;*" and the wife cannot recover against the feoffee more than he could recover in value against the heir. (MSS. of Sir *Matthew Hale,* cited by Mr. *Hargrave,* note 193. to *Co. Litt.* 32 *a.*)

These old authorities refer to the time of the alienation by the husband, for the true period at which to estimate the value. There can be no doubt of the meaning of these cases ; and if the land has, subsequently, by improvements, increased in value, the wife cannot recover against the feoffee more than the value *at the time of the feoffment,* or *at the time of the husband,* because the feoffee cannot recover on his warranty more by way of indemnity against the heir. The rule is founded in sound policy, and does not discourage the purchaser from making improvements.

*If the husband dies seised, the widow takes her dower, at the value at the time it is assigned to her by the heir.*

If the husband dies seised, the heir may assign the dower when he pleases ; and if he neglects it, and improves the land by cultivation or buildings, before the assignment, it is his own voluntary act, with knowledge of his rights ; and the widow takes the value, in that case, as it is at the time of the assignment. The rule is fixed and steady; and whether the land be improved in value, or whether it be impaired in value, in the time of the heir, the endow-

ment is still to be according to the value at the time of the assignment. (*Co. Litt.* 32 *a.*) And why should not the rule be equally fixed in the present case? The purchaser ought not to be exclusively entitled to his election, to take the time from the alienation, or from the husband's death, as may best suit his interest. It would be very unreasonable, to give that election to the purchaser, and deny any choice to the widow. The rule, to be equal and just, must be mutual. If the purchaser is entitled to take the period of the husband's death, when the land has depreciated since his purchase, the widow ought to be entitled to take the same period, if the land had risen in value. It is not to be supposed, that the period can be ambulatory, at the choice of the purchaser, and that the widow shall have no choice in the case. But there is no colour in the books for the suggestion, that the time is unsettled, and depending on the volition of either party. It may suit the interest of the defendant, to take the period of the husband's death, in this particular case; and, perhaps, in the very next case that arises, it might equally suit his interest to take the period of the alienation, for the estimate of the value. The rules of law are, however, not subject to such alternation; and it is *settled,* from time immemorial, and on principles of justice and sound policy, that the value of the dower, in case of alienation by the husband, is to be taken at the time of the alienation, and not subsequently, and the rule is not to be disturbed to suit the views of one party.

It might, possibly, be made a question, whether the widow is entitled to the advantage of any increase in the value of the land by extrinsic causes, and not from actual improvements, or whether she was still to have one third of the rents, or one third of the land, or whether the quantity of each was to be reduced to the value at the time of alienation. Suppose a valuable mine of coal or ore, or a valuable spring of mineral or salt water, should be dis-

1822.

HALE
v.
JAMES.

Whether the widow is entitled to the advantage of an increase of value arising from extrinsic causes, as the discovery of a mine, &c.

1822.

HALE
v.
JAMES.

covered on the land, subsequent to the alienation ; or sup-
pose some revolution in commerce, or some great internal
improvement, as the line of a canal for instance, should sud-
denly increase the land in the hands of the purchaser a
hundred fold, would the widow take her dower at this in-
creased value ?  I state these points, without giving any
opinion upon them, for they do not arise in this case ; and
a very little reflection on the subject would teach us, that
the rule, as it stands, is the most favourable to the pur-
chaser.  Take one case with another, the land is more
likely to increase than to diminish in value, because, land
is almost every where, in this country, in a state of rapid
improvement ; and the widow would be the gainer, in most
cases, over the purchaser, if we had it in our power to dis-
locate the rule of computation, and transfer it from the
time of alienation to the time of the husband's death.

The next question is, whether we are to take the date
of the mortgage, or of the release of the equity of redemp-
tion, as the period of alienation, within the meaning of the
rule.

*If the hus-
band mort-
gages the land,
and, after-
wards, releases
the equity of
redemption,
the time of the
release is the
time of aliena-
tion, when the
value, as to
dower, is to be
taken.*

The husband, in this case, retained the possession until
after the release of the equity ; and a mortgagor in posses-
sion is regarded by this Court as the owner of the estate,
and as dying seized, in respect to the dower of his wife, in
case he dies before entry or foreclosure by the mortgagee.
I have no difficulty, therefore, in taking the time of the re-
lease as the period of alienation, from which the value of
the dower is to be computed.

Taking, then, the 24th of *March,* 1817, as the true pe-
riod, the average value of the premises, on that day, may
be estimated at 7,333 dollars, exclusive of the subsequent
improvements.  The interest of one third of that sum is
171 dollars 10 cents ; and that would appear to be the
proper assessment, if the defendant is to pay (as he assents
to pay) an annuity, instead of submitting to an assign-
ment of one third of the realty by metes and bounds.  Why

should not the interest upon the one third of the actual value of the premises at the time of alienation, be the measure of the annuity? I do not know that there can be a more just and certain rule by which we can ascertain the amount of the annuity. When an estate is sold under a power in a will, or by order of this Court, and the widow consents to join in the sale, and take the value of her dower out of the purchase money, she takes either a gross sum liquidated by the value of her life, according to the tables of life annuities, or she has the interest of one third of the purchase money secured to her for life.

But it is suggested, that there ought to be an abatement in the amount of the annuity, on account of necessary repairs, and the risk by the defendant of destruction, or the expense of the premium of insurance of the dwelling house. Some deduction from the annual amount of the annuity would seem to be reasonable; for suppose that, instead of the commutation assented to in this case, the plaintiff had chosen to have part of the dwelling-house and yard assigned her, would she not have run the risk of loss of her enjoyment of the buildings by fire, and would she not have been responsible for permissive waste, and so far bound to contribute to reasonable reparations? The difficulty consists in ascertaining what rateable deduction ought to be made. There is no certain ratio to be prescribed. If one per cent. be deducted from the annuity, I should suppose it to be a reasonable and sufficient deduction. Instead of seven per cent. on the one third of the value, take six per cent., and that will reduce the annuity to 146 dollars 66 cents. This leaves a yearly allowance of 24 dollars and 44 cents, for reparations and risk.

The remaining question is, as to costs. When the heir, or purchaser, throws no impediment in the way of the widow's claim, costs are not given to her. If the defendant sets up any unfounded pretence, so as to create a vexatious resistance, the rule is to give the dowress costs, but not

Where the tenant, instead of assigning dower, consents to pay an annuity, the *interest* of one third of the value of the land, at the time of alienation, is the proper measure of it. But some deduction is to be made, where there are houses, for repairs, and risk against loss by fire.

1822.

HALE
v.
JAMES.

*Costs not allowed on a bill for dower, if there has been no undue hindrance to the claim, on the part of the defendant.*

otherwise. The rule was so declared in *Lucas* v. *Calcroft*, (1 *Bro.* 134. *Note* to 1 *Ves. & Bea.* 20. S. C.) In *Curtis* v. *Curtis*, (2 *Bro.* 620.) the Master of the Rolls observed, that the dowress has no costs where the heir has thrown no difficulties or impediment in the way ; and if he admits the widow's case, he is safe. In *Morgan* v. *Ryder*, (1 *Ves. & Bea.* 20.) the Master of the Rolls gave costs, because the widow had, without any just pretence, been vexatiously kept out of her dower by the heir. The same principle, as to costs on a bill for the assignment of dower, was adopted by this Court, in *Hazen* v. *Thurber* ; (4 *Johns. Ch. Rep.* 604.) and again, in *Genet* v. *Genet*, decided on the 7th of *February* last ; and in both of these cases, costs were denied, because no vexation or undue hindrance of the claim, was shown or proved.

The answer of the defendant admits the plaintiff's right to dower, and denies that he ever refused to assign to the plaintiff her dower according to law ; and he accepts the offer of the plaintiff made in the bill to pay annually, and to give sufficient security for the annual payment of an adequate sum in lieu of dower. But in a negotiation between the defendant and the son and agent of the plaintiff, respecting the amount of such annuity in lieu of dower, the parties differed. The plaintiff insisted, that the annuity should be computed according to the value of the premises at the time of the alienation, and the defendant contended that the sum should be estimated according to the depreciated value of the premises, at the death of the husband ; and under that difference of opinion, the suit was instituted. The defendant was clearly in an error as to the *data* upon which the annuity was to be computed ; but the commutation in lieu of dower was, altogether, a matter of agreement and consent between the parties, and there is no evidence, that the defendant has thrown any impediment in the way of the plaintiff's title and right of dower, if she had chosen to have her dower duly assigned to her accord-

ing to law. On the contrary, he admits her right, and denies he ever refused to assign dower, in case it had been duly demanded. All that he did, was to insist upon certain terms, which were inadmissible, when the parties treated with each other on the ground of compromise, and endeavoured to settle the principles of the commutation. If the plaintiff had then demanded her dower to be assigned, and he had made resistance, and compelled her to resort to this Court, the case would have had a just foundation for costs. As it is, I do not think the plaintiff has brought her claim for costs within the doctrine of the cases on the subject.

The plaintiff, by her bill, offers to accept " of an adequate sum yearly, in lieu and bar of her dower;" and the defendant accepts the offer " to pay annually, and to give sufficient security for such annual payment;" and I cannot require, as has been suggested on the part of the plaintiff, that the payments should be quarter yearly.

I shall, accordingly, declare, that the value of the dower is to be computed from the time of the alienation, on the 27th day of *March*, 1817, and that the defendant pay, annually, from the 3d day of *September*, 1821, to the plaintiff, during her life, 146 dollars and 66 cents, and give adequate security for the payment, to be approved of by a master, and that no costs be charged by either party against the other.

Decree accordingly.