Carr, J.
The directions of the statute of 1792, as to the privy examination of femes covert by commissioners in the country, touching their acknowledgments of deeds, seem to me clear and explicit. The commissioners are commanded, 1. to examine the wife privily and apart from her husband ; 2. to take her declaration that she willingly signed and sealed the deed, which they are then to shew and explain to her; 3. that she consents that it may be recorded. And the commissioners are to return with their commission, *508 a certificate, 1. of such privy examination; 2. of such declaration made; and 3. of such consent yielded. It was contended strongly, that the certificate must state also, that the deed was shewn and explained to the feme j but this seems to me to be adding to the requisitions of the law. It is clear, that the commissioners are directed to shew and explain the deed to her, on her privy examination ; but this need not be certified; for the law expressly limits the certificate to the privy examination, the declaration, and the consent. Words could not make this plainer, as it seems to me. The certificates are alike in the two deeds before us. They are to the following effect: “ We have this day gone to Mrs. Baylor, and examined her privily and apart from her husband” (here is the first requisite of the law, the privy examination, clearly stated) “ who makes to us her acknowledgment of the conveyance of the 320 acres of land contained in the indenture hereunto annexed, freely and voluntarily;” that is, as I understand it, who makes to us her acknowledgment, or declaration, that she freely and voluntarily conveyed the 320 acres contained in the indenture thereto annexed; which, to my mind, is a perfectly substantial compliance with the second requisite of the law, namely, a declaration that she willingly signed and sealed the said writing. The certificate proceeds, “ and that she is willing the same shall be recorded in the county court of Caroline:” here is the third requisite. My opinion is, then, that to every reasonable and substantial purpose of the law, this is a good and sufficient certificate.
Upon an examination of the deed of 1801, it appears, that though it purports to be the deed of the wife, and she has thus acknowledged the execution of it, yet she has never in fact signed it. Upon the general doctrine, that sealing and delivery constitute the deed with the persons sui juris, and that, with a feme covert, the privy examination is the vital principle, I was strongly inclined to consider this deed binding on the widow. But the statute of 1792, by requiring the wife to declare on her examination, *509 that she willingly signed and scaled the deed, raises some doubt, whether the legislature did not contemplate her signing as necessary j and two of my brethren think the deed, for want of this, not binding on her. I therefore yield the inclination of my mind on that point.
The next objection taken to the decree is, that it directs the dower to be allotted according to the present value of the land with all its present improvements, instead of the value at the time of alienation. I consider it the clear rule of the common law; that where a husband aliens during coverture, and the widow claims dower in those lands after his death, she shall not be entitled to dower according to the improved value of the land, but must take her dower according to the value at the time of alienation. Fitz. Abr. tit. Dower, § 192. Perk. tit. Dower, ^ 328. liarg. Co. Lilt. 32.a n. 8. citing Male’s MSS. 1 Rop. on Prop. 346. 4 Kent’s Comm. 64. Humphrey v. Phinney, 2 Johns. Rep. 484. Hale v. James, 6 Johns. Ch. Rep. 258. This doctrine seems to rest on ground similar to that of the recovery of a vendee of land against the vendor, on eviction ; which, on great consideration, we have fixed at the purchase money with interest, in Stout v. Jackson, 2 Rand. 132. and Threlkeld v. Fitzhugh, 2 Leigh 451.
Another objection taken to the decree, is, that the chancellor has given rents and profits from the death of the husband. I think, in a case of alienation by the husband, this was wrong. At law such profits could be given only as to land of which the husband died seized ; and I think equity, which takes jurisdiction, in these cases, only from the superiour convenience of its proceeding, ought in this point to follow the law. But for a fuller view of this subject, I refer to the reasons and authorities which will be stated by the president.
Cabell, J. concurred.
*510 Brooke, J. The statute of conveyances of 1792, requiring that a feme covert shall declare to the commissioners for her privy examination, that she willingly signed and sealed the deed, leaves no ground for a construction that would dispense with that part of the execution of the deed by the feme covert. Although the sealing and delivery of the deed is, by the common law, the essence of its execution, and though when-the privy examination is before the court of record, that is all that is required by the statute; yet we cannot intend, that sealing and delivery is all the statute requires, when the privy examination is had before commissioners in the country, against the express letter of the statute.- It would be doing great violence to the language of the law, to dispense with signing by the feme covert. Since seals, except by mere scrolls, have gone out of use, signing is better evidence of the execution of a deed than sealing with a scroll, which may be at all times forged without the probability of detection. When the privy examination of a feme covert is bad before a court of record, the signing by her seems not to be required ; yet when it is had before commissioners in the country, the signing may have been required as an indispensable guard against fraud. I think, therefore, that the first deed was not duly executed by Mrs. Baylor, according to the statute of 1792.
As to the second deed, which was signed by her, I think the certificate of her privy examination by the commissioners in the country, substantially good and sufficient; and that she has no claim to dower in the land conveyed by that deed. But as to the deed which she did not sign, though the certificate of the commissioners of her privy examination as to it, would also have been sufficient if she had signed it, she is not barred of her dower as to the lands thereby conveyed by her husband by that deed.
Whether she is entitled to be endowed, according to the value of the land at the time of the alienation by her husband, or at the time of the assignment of her dower, is another question. The 4th section of our statute of dower *511 certainly does not embrace the case before us. It is, substantially, taken from the statute of Merton, which only provided for the case in which dower is claimed by a feme covert, of lands of which her husband, died seized. And this provision was an exception to the rule of the common law in all droitural actions, in which no damages were recovered ; and cannot be extended beyond tho provision, on any ground of policy or supposed hardship. In truth, in the case before us, it is more than probable, as the value of lands has generally fallen, that the value of the land was much greater at the date of the deed of alienation, than at this time; so that the rulo of the common law is a better rule for the feme covert than the rule under the statute. And tho rule of the common law is more consonant with the role established by this court, in the cases of Stout v. Jackson and Threlked v. Fitzhugh; namely, that the value of the land at the date of the warranty, and not at the time of eviction, is the true measure of damages. It would be very hard on the alienee, to subject him to greater damages than he could recover upon the warranty of the husband against the heir, according to the decisions just mentioned. For tho rule of the common law in regard to such cases as that now before us, I refer to the authorities cited by judge Carr.
On these grounds, I think the decree of the chancellor must be reversed, and the cause remanded for farther proceedings; in which dower is to be assigned to the appellee, of the lands conveyed by the first deed which she did not sign, according to the value at the date of the alienation by her husband, with the rents and profits from the suing out the-subpoena in this cause.
Tucker, P. The first question in this case, arises on the construction of the statute of conveyances of 1792. Disencumbering that section of the statute, of those words which are not immediately necessary in deciding this question, it provides that “ when husband and wife shall have sealed and delivered a writing purporting to be a conveyance *512 of any estate or interest, if, before two justices who may be empowered by commission to examine her privily and take her acknowledgment, the wife, being examined privily and apart from her husband, shall declare that she willingly signed and sealed the said writing, to be then shewn and explained to her by them, and consenteth that it may be recorded, and the said commissioners shall return with the said commission, and thereunto annexed, a certificate under their hands and seals of such privy examination and declaration, and consent yielded by her,” then the deed shall be binding on the wife.
According to this statute, the commission ought to recite, that the husband and wife had sealed and delivered a conveyance purporting to be a conveyance [here setting forth succinctly of what, or otherwise referring to the writing so as to describe it] and should empower the justices to examine her privily and take her acknowledgment of the said writing; and such commission, without more saying, would be good; for it is in the words of the law. And even if not literally in those words, yet if it be substantially so, it will suffice, or many titles in the country would be shaken. Thus, in the present case, though it is not stated, in terms, that the parties had sealed and delivered a conveyance, it is stated that “ by indenture (which is a writing sealed and delivered) dated the 12th October 1803, they had sold and conveyed” an estate &c. This is a substantial compliance, and therefore good.
Now as to the certificate. The law is not content with the justices merely echoing the commission, by certifying that they had privily examined the wife, and she had aclcndwledged the writing; but it goes on to prescribe what shall be certified by them. The wife, being examined privily and apart from her husband, must declare that she willingly signed and sealed the writing, to be then shewn and explained to her; and must consent that it be recorded. The justices are then to certify such privy examination (that is, that she was examined privily and apart from her husband) and such *513 declaration made (that is, that she willingly signed and sealed the writing) and such consent yielded hy her (that is, that it be recorded). Nothing can be more clear than the construction of this clause, except as to the words “ to be then shewn and explained to her they do not seem, by a literal construction, to require the fact of shewing and explaining the deed to be expressly certified; for they stand out, as it were, from the rest of the clause, and seem merely directory. Yet, as in acts in pais, those presumptions are not usually made, that every thing has been rightly done unless the contrary appears, which are made by law in relation to the transactions of a court, it has been always my impression that, in strictness, this matter also must be certified or must in some form appear. If the question was now of the first impression, I should be for construing the statute with very great strictness. It prescribes the mode in which a person may convey, whose power of conveying was before circumscribed to the forms known to the common law. It is an innovation upon that law; it prescribes a form of conveyance unknown to it. It ought, therefore, to have been required to be strictly complied with : a literal compliance would not indeed have been demanded, but a substantial compliance in every thing material. I fear, however, that the practice of the country, ever since the introduction of the commission, has been very far from conforming to the requisitions of the law, with any thing like strictness. The alternative is therefore presented, of abating somewhat of this rigor, or of running the risk of shaking land titles. If the case of dower was alone in question, it would be less important, but conveyances of the maiden land of femes covert would also be involved. Our predecessors, accordingly, seem to have been cautious in their decisions upon the laws which were the originals of this statute. In Harvey v. Borden, 2 Wash. 156. it did not appear from any part of the record, that the commissioners were justices of the peace, as was required by the statute of 1748; they were not so styled in the commission : yet the court over *514 ruled the objection, judge Roane saying, “ the law requires the cleric to direct it to such persons, and he ought not to be presumed to have done wrong;” and judge Fleming said, “ I do not think that we carry the doctrine of presumption beyond its accustomed limits, when we say, that to support this deed we ivill intend that the laiv has been obeyed unless the contrary appear.” In Ware v. Cary, 2 Call 263. the names of the justices were omitted ; the commission was directed to —-gentlemen justices; it was executed by two persons, who certified “ that they acted by virtue of the commission thereto annexed,” but they did not say “directed to us,” nor did they certify that they were justices of the peace : yet the objection was overruled. Influenced by like considerations in the recent case of Langhorne v. Hobson, this court overruled the objections to the commission and privy examination, and ratified the title of the purchaser.
What, then, let it be asked, is essential in the certificate? The answer is, that it should ascertain satisfactorily', in some form or other, those facts which the law deems essential to the transfer of the title of the yfeme. Those facts are, 1. her privy examination apart from her husband; 2. her knowledge of the nature of the act done; 3. her acknowledgment of the conveyance; 4. her declai-ation, that that acknowledgment is free and voluntary'; and 5. and last, her consent that it may be recorded. If these facts substantially appear, the certificate is good; and though not certified in so many words, if they satisfactorily appear, it will suffice. Now in this case, it is expressly certified, 1. that the feme was privily examined apart from her husband; and 2. that she acknowledged the conveyance of the 320 acres of land contained in the indenture thereto annexed. 3. Her knowledge of the nature of the act she was doing, appears from the certificate that she acknowledged the conveyance of the 320 acres contained in the deed; for how could they certify that fact, unless she knew that that deed did convey that 320 acres ? 4. This acknowledgment was made freely and voluntarily; and lastly, she consented it should be recorded.
*515 If this certificate be not sufficient, I fear there are few that are so in the commonwealth. I have examined the records of the circuit and hustings courts here. The following form is that which seems to have prevailed previous to 1819. It was printed at the foot of the printed commission. “ Pursuant to the within commission, we did this day examine the within named A. B. privily and apart from her husband, and made known to her the contents of the annexed indenture, when she acknowledged the same to be her act and deed, declaring to us that she did the same freely and voluntarily, without the persuasions or threats of her said husband, and was willing the said deed should be recorded.” Here, there is no direct allegation that the deed was shewn to the feme, or that she acknowledged that she signed the same.
I am, then, of opinion, that the deed of October 1803, was duly executed to bar the widow’s claim of dower.
I am however of a very different opinion as to the other deed, that of November 1801. For, though the certificate is the same, the fact is not according to the declaration and acknowledgment. When it is certified, that the feme acknowledged the deed, we may safely imply that she acknowledged that she had signed and sealed it, if upon the face of the deed, she appears to have signed and sealed it. But if the writing be in fact signed, without being sealed, her acknowledgment would not prove it to be sealed; and e converso, if it be sealed without being signed, the acknowledgment cannot justify the inference that it was signed, contrary to the express fact. And although we do not require the certificate to be in the express language of the law, neither do we dispense with any part of the law. We only consider the language used, as if it was the very language of the law. The purchaser’s case can certainly be no better for its variance from that express language. Now, if the commissioners had followed the law literally, they would not have certified that the wife declared she had willingly signed and sealed, because she had not signed. Or take it to have been so certified; then it is certified that she had *516 femes covert, an exception to the rule may be inferred. Jt only remains on this part of the subject, to say, that I do not think the acknowledgment of the seal can be an acknowledgment of a signing, or that the insertion of the name of the feme in the body of the deed, can help the case. signed, when in fact she had not; so that the certificate or declaration is falsified. It was said, indeed, that this word signing has been here introduced inadvertently. But of this we are not entitled to judge : it a lex scripta est. It is more probable, that the legislature considered signing a necessary concomitant of every deed or conveyance. I am not prepared to dive into its motives, but if it be true at this day, that deeds are in general to be considered good though not signed, I think it is at least fortunate that in relation to
The widow is, I think, clearly entitled to dower in the 300 acre tract, conveyed by the deed of November 1801.
In this view of the case the decree must of course be reversed ; and, therefore, an examination whether it did or did not exclude the .improvements in the order to lay off the dower, is unnecessary. On that point, I shall only say, that I think the law very clear, that, in laying off the dower, the improvements made by the purchaser, should be excluded from the estimate, except that improvement in the productive character of the soil which arises from the course of husbandry. In like manner, I am of opinion, that the accession of value arising merely from the progress of society, and the general progressive increase in the value of lands consequent upon increasing wealth and population, cannot be thrown into the scale of the purchaser, or diminish the quantity of land to which the widow will be entitled. But on this point my brethren differ from me.
As to the profits: I have always thought, that, as the alienee is not liable at law for rents and profits, because the statute of Merton copied in the 4th section of our statute of dower, only gave damages where the widow was deforced of lands whereof the husband died seized, so neither ought she to recover them in equity. It seems to me an absurdity, *517 that in matters of concurrent jurisdiction, there should be different measures of redress in the two courts. It is yet more strange, that when, with a view to affording facilities to the dowress, jurisdiction is entertained of her case, instead of leaving her to her legal remedy against a party claiming a legal title, her remedies should bo so vastly enlarged by this assumption of jurisdiction : and it is most of all strange, when the statute limits the damages to one class of cases, and excludes them from another, that a court of equity should repeal or add to the act of the legislature. I do not think there is an adjudged case to justify it, in the case of the alienee. Curtis v. Curtis was cited to prove that equity will go farther than the law in giving a remedy to the dowress : for although at law, the action against the heir as a deforceor, dies with him in respect to the damages, because it is in the nature of a tort, yet in that case, the demaud for profits was sustained though the heir died before the decree. But it is to be observed, that the court proceeded mainly on the idea that the dowress brought her suit in the lifetime of the heir, and waived the trespass by bringing her bill in equity; and I am aware of no case in which the bill lies for mesne profits, unless filed before the death of the heir. That cases have been decided in New York, on this point, favorably to the widow, cannot be denied; Swaine v. Perine, 5 Johns. Ch. Rep. 492. Hale v. James, 6 Id. 258. But these cases are not authority for us, where they are neither sustained by the current of decisions of those tribunals from which we have drawn our law, nor are consistent with its acknowledged principles. There is no such current of authorities in favor of the widow’s right to profits against the alienee. In Dormer v. Fortescue, 3 Atk. 124. 131. lord Hardwicke, in deciding another point, incidentally mentions the case of a widow, and states that in some cases she will be decreed profits from the time her title accrued; but, even in this incidental remark, he takes a distinction : where the widow cannot proceed at law because of a term that is in her way, the court will give her *518 profits from the time her title accrued ; but where the term is out of her way, and she has no need to come into this court, it would have been otherwise. That is, in effect, the court of equity alone having jurisdiction in the first case, administers relief at its pleasure; but having only concurrent jurisdiction in the latter, it 'follows the law, and gives profits only as the law would give them. It is proper to add also, that lord Hardwicke does not advert particularly to the case of the alienee. The case of Curtis v. Curtis was a case against the heir as was also the case of Mundy, v. Mundy, 2 Ves. jr. 132. and so, I think, we must take Oliver v. Richardson, 9 Ves. 222. There being, then, no direct controling authority, and the two jurisdictions being concurrent as to this matter, I think the court of equity should follow the law, and give no damages in dower against the alienee, except from the date of the decree.
With these views, I am of opinion to reverse the decree and send the cause back for further proceedings.
Decree reversed, and the cause remanded to the court of chancery for further proceedings, in which dower should be assigned to the appellee of the land conveyed by the deed of her husband which she did not sign, (that of November 1801) according to the value of the land at the date of the deed; and an account should be taken of the profits, from the suing out of the subpoena in the cause.