## Case No. 7,426.
### JOHNSTON v. VANDYKE.
[6 McLean, 422.] [1]
Circuit Court, D. Michigan. June Term, 1855.

Campbell & O'Flynn, for plaintiff.
Frazer & Emmons, for defendant.

Before McLEAN, Circuit Justice, and WILKINS, District Judge.

WILKINS, District Judge. A special verdict was rendered in this case, finding that the George Johnston, mentioned in the declaration, was married to the plaintiff in the year 1810; that about that time they resided on the premises in question; that the husband was seized of the same on the 24th of Sept., 1816, and from that time continued so seized until the 28th of Oct., 1816, when he sold, and conveyed the same to one Stephen Mack, and that the defendant now owns and holds the same by mesne conveyances from said Mack. The verdict furthermore finds that the said Johnston and his wife removed and settled in the territory, and now state of, Wisconsin, in the year 1820, where they continued to reside until the year 1850, at which time the said George Johnston, the husband, died, and that the plaintiff removed to this state in the. fall of 1853, subsequent to the institution of this suit. The verdict further

[1] [Reported by Hon. John McLean, Circuit Justice.]

finds that the premises described were in October, 1816—the time of alienation—worth the sum of $1,800, and embracing the improvements since made, are now worth the sum of $40,000; that the improvements made are worth $8,000; that dower was demanded on the 31st of March, 1851, and in May, 1852, according to the allegations in the declaration. Upon this verdict, the plaintiff now moves that judgment be entered in her favor, assigning her dower in the premises demanded, and declaring the defendant guilty of withholding the same: and that the court appoint three disinterested and respectable freeholders commissioners for the purpose of making the admeasurement of the dower of the plaintiff, out of the lands described in the record. according to the provisions of the fifty-fifth section, of part 3, tit. 3, and chapter 2 of the Revised Statutes of the state of Michigan of 1838, p. 479; and that, in making such admeasurement, the said commissioners be directed to admeasure the same to the plaintiff, irrespective of any improvements made by the defendant, and allowing to the widow all advances in the value of the said premises arising from extreme circumstances since the alienation.

In resisting this motion. two objections are urged: 1st. That the plaintiff. when this action was brought, was a non-resident widow; and, therefore, not entitled to recover dower, her husband not being seized of the same at the time of his death. 2d. That, conceding the existence of her right, yet her dower is to be set off according to the value of the premises when they "were aliened" by her husband, according to the provisions of the Revised Statutes of Michigan of 1846.

1. The Revised Statutes of Michigan of 1846, tit. 14, c. 66, pp. 267, 270, in relation to estates in dower and estates by the courtesy, provides:

"Section 1. That the widow of every deceased person, shall be entitled to dower. or the use during her natural life, of one-third part of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage, unless she is lawfully barred thereof"—and by section 21: "That, a woman being an alien, shall not on that account be barred of her dower; and any woman residing out of the state, shall be entitled to dower of the lands of her deceased husband. lying in this state, of which her husband died seized, and the same may be assigned to her or recovered by her. in like manner, as if she and her deceased husband had been residents within the state at the time of his death." These provisions are not in conflict. They are parts of the same statute; and, while the first section is general, recognizing the right of "the widow of every deceased person," whether resident or non-resident, to dower of all lands whereof her husband was seized during marriage; the 21st section cannot be fairly construed as restrictive of or limiting such right to

any particular class of widows, or to a certain classification of lands. For this section (the 21st) must be considered in connection with the eight preceding sections, and as especially descriptive of those who shall not be barred of dower. The statute declares elsewhere that dower may be barred by voluntary conveyance or jointure, and then, in this section further enacts, that an alien, "on that account shall not be barred;" and, that a non-resident widow shall have dower assigned her, of the lands of which her husband died seized, in like manner, as if she had been a resident within the state at the time of her husband's decease. But the statute no where creates, as to the right of the widow, a distinction between lands aliened during the life-time of the husband, and lands of which he died seized: her right of dower, as to both the one and the other being clearly embraced within the general provisions of the statute. The 21st section certainly does not confine the alien widow to such limitation; and it is not to be reasonably inferred as the intention of the legislature, by the terms employed, to favor in this respect, the resident alien, more than the non-resident citizen. Wherefore should the legislature establish a distinction between the resident and the non-resident, which in the same section is repudiated as between the alien and the resident? But, as provision is made in the 8th section, that, "When a widow is entitled to dower in lands, of which her husband died seized, and when her right of dower is not disputed, that she may have it assigned to her, in whatever counties the lands may lie by judge of probate of the county in which the estate is settled:" it would seem that this 21st section was alone intended to extend to the non-resident and alien widows, the same privilege with the resident, of having dower assigned and recovered, and not to deprive her of a right conferred by the contract of marriage, and not subsequently barred by any act on her part. It is true, that the statute speaks of "a married woman, residing within the state barring her dower by deed of conveyance" according to a specified form; and "a woman" without defining her residence, accepting a jointure before marriage in lieu of dower; and "a woman residing out of the state, having dower assigned," and also of "lands of which the husband died seized," and lands held "during marriage;" but, it is not perceived how this difference of phraseology, in the connection in which the same is employed, marks any distinction with reference to whom the right of dower pertains, or, as to the estate to which it shall apply. The legislature never intended that a non-resident widow, whose husband, during coverture, was seized of lands, and who sold the same without her consent, as required by the 13th section, should be barred of her right of dower, merely by the fact of her non-residence at the time of her husband's decease. If such was the intention, it would make the existence of the right of every married woman to dower in her husband's lands, contingent upon his continued residence within the territorial limits of the state, defeat the beneficent policy of the law, by enabling him at all times capriciously to bar the wife's dower by a removal, and consequently make this sacred right of the widow dependent upon his will. This would be inconsistent with the other provisions of the statute, which most carefully protect the interest of the wife, whether resident or non-resident, and requires that where she joins in any conveyance of lands by her husband, the acknowledgment of the act shall be before some public functionary—under certain prescribed solemnities, and with the evidence of the act being voluntary and without the coercion of the husband. This statute, then, in providing that "any woman residing out of the state shall be entitled to dower in the lands of which her husband died seized, and that the same may be assigned her as if she had been resident within the state," is not considered as restrictive of the right of a non-resident widow in the recovery of dower, or, as inhibiting the same as to lands sold during coverture.

But giving the construction contended for by the defendant's counsel, and holding that a non-resident, under the statute, is only entitled to dower in land of which her husband died seized—the facts presented by the verdict, are such as render this statute inapplicable. The marriage occurred in 1810, seizen and alienation in 1816; the death of the husband in 1850. By the common law of England, the widow was entitled to be endowed of all lands and tenements, of which her husband was seized in fee simple or fee-tail at any time during coverture, and if the seizen was in the husband but for a single moment, the right of dower attached. Cro. Eliz. 503; Co. Litt. 31. No statutory provision of the late territory of Michigan contravened this rule of property, and the Revised Statutes of the state of 1838 and 1846, expressly declare that every woman shall be entitled to her dower, as at common law. The ordinance of 1787 saves in all cases to the widow of an intestate the 3d part of the real estate for life, and declares "that the law relative to dower shall remain in full force, until altered by the legislature." As the law treats marriage in no other light than as a civil contract, between parties able and willing to contract, and although the husband and the wife are as one person as to many legal consequences of their union, yet, the latter is at the time of the contract, vested with a personal individual interest in her husband's real estate, which the law shields and protects for her exclusive benefit. This right is always implied, and in many ecclesiastical nuptial celebrations, it is expressed "in totis verbis;" "of all my worldly

estate, I thee endow," cannot be considered as mere words of ceremony without substantial meaning. It is a right inchoate then at the time of marriage, suspended during coverture, yet untransferable without her consent, attaching to the realty as a valid title of an estate for life, on the death of the husband, and can only be barred by her own act, and not by subsequent legislative provisions. But the act of 1846 was not designed to operate retrospectively. Such a construction is apparent from its terms. The future tense is used throughout, wherever the right in the process to secure it. is indicated. The phrases "shall be entitled,"—"shall purchase lands during coverture,"—"shall be entitled to an election," &c., and phraseology of like prospective import, are the terms employed. And where there is no positive enactment. or, a clear, unavoidable inference of a retrospective intention, as in this statute of 1846; the rule of interpretation is adverse to a retroactive operation, especially where civil rights will be thereby affected. Such the doctrine of Dash v. Van Kleeck. 7 Johns. 477; Given v. Marr, 27 Me. 212; White v. White, 5 Barb. 474; Mundy v. Munroe, Man. [1 Mich.] 69; Sayre v. Wisner, 8 Wend. 661. Not a word in this statute applies to the past or affects in any way the right of dower, previously vested; and the repealing clause, at the close of the volume, expressly protects every right which had accrued antecedent to the adoption of this revised code of 1846. But had such been the obvious intention, the law would have been invalid; for this right of dower vests in the woman, whenever marriage and seizure combine. On this principle, and to avoid dower, must the woman join in the conveyance by her husband, and her joint execution of the deed as a voluntary act be made manifest on the instrument itself. If such a right was not a vested right, wherefore the necessity of the provisions in regard to barring dower? The wife's execution of the deed, separate and apart from her husband is for some purpose; it does, or does not transfer a right. If the latter, the act is an useless form; if the former, then the right was vested in her during coverture. 1 Greenl. Cruise, ' 198; Kelly v. Harrison, 2 Johns. Cas. 29; 8 Wend. 661. In Kelly v. Harrison, the court in New York held, "that the right of dower was an inchoate right, and deemed so sacred, that no revolution or change of government could affect it." From 1810. the period of her marriage, to 1816. when the estate was sold by her husband, the plaintiff was vested with this inchoate right of dower, and the property being transferred without her consent, this right remained suspended until the death of her husband in 1850. The law of 1846 could not, and did not design to interfere with a private right so vested. It is saved by the ordinance of 1787, and it is protected by the provisions of the existing statute.

2. But, it is contended, that by the 7th section of the act of 1846, the plaintiff is only entitled to dower, to be assigned her according to the value of the lands in 1816, when they were aliened by her husband.. This section declares that, "when a widow shall be entitled to dower out of the lands,. which shall have been aliened by the husband in his life time, and such lands shall have been enhanced in value after the alienation, such lands shall be estimated in setting out the widow's dower, according to their value at the time when they were so aliened." Now, whatever right was acquired by the marriage and seisin, was certainly a right vested in the widow antecedent to the statute of 1846, and could not, therefore. be affected by any of its provisions. The legislature could change the process by which the right was ascertained. such as directing the mode of setting off dower, but could not curtail or diminish the right itself. The title is to a life estate in . one-third of the lands of which the husband was seized. Such was the common law title. And such was the title vested in the plaintiff in 1816. It was not a right to one-third of an estimated value in dollars and cents at any period. but an absolute right to the enjoyment and possession of so much of the real estate, according to quality, as should be set off by metes and bounds.

At common law, where improvements have been made by the heir, or where the estate has been impaired in value by the heir or tenant, the widow is endowed according to the value at the time of the assignment of dower; because in the one case the heir improves with a knowledge of the widow's rights, and in the other, the assignment being by metes and bounds, she must resort. for the damages sustained, to another form of action. Co. Litt. 32a. But should a feoffee improve the land, the widow shall only be endowed according to the value at the time of the feoffment, and not according to the value when dower is assigned; because the increased value is the consequence of the labor and expenditure of the feoffee. Whatever right existed in the widow, it was inchoate. dormant and contingent during coverture. becoming only consummate on the death of the husband. It was a right that could not be realized in any form, or be applied or attached to the land. as long as the husband lived: and in case of her prior death the right ceased. and could never attach. It had then no specific appropriation when the property was aliened in 1816. and none at any subsequent period up to 1850. when the husband died; and she was then entitled to have dower set off in the premises, and not before. The jury find that in 1816 the farm was worth but $1,800; that it has been improved by its various proprietors to the amount of $8,000. and is now worth $40,000. inclusive of these improvements. Had the husband died before the statute of 1846, and

the property had been so far enhanced in value from like improvements and the corresponding advance of the country around, the widow's dower then attaching, would, under the existing law, have been one-third set off by metes and bounds, exclusive of the improvements made by the vendees. She claims no more in this action. And if the law then allowed her this, as her right of dower, it may well be asked can the law of 1846, or rather does it impair or diminish it? But she does claim that the assignment of her dower, shall be with reference to the enhanced value of the land, arising from the circumstances of the gradual advance of the country in population and prosperity. To this she is entitled. Her right pertained and was incidental to the tenure of the land. She never parted with her right. It was connected and concurrent with the estate,—was even manifest in the chain of title, and as circumstances, independent of and uncontrolled by the present proprietor or his vendors, increased the value of the premises, there is no reason why she alone of those having a legal interest in the same, should not reap her share in the common blessing. To assign her dower according to the value of the lands when aliened, would be depriving her of the benefits in which all the inhabitants of the country, and especially landholders, have participated; and to allow her the advantage of the improvements made by the various vendees, would be giving her a share in the labors of others, made, to be sure, with a presumed knowledge that their chain of title was incomplete, (and allowed at common law,) but inconsistent with the settlement and advance of a new country, and consequently not recognized in the United States. At common law the widow was not excluded from improvements of any kind, whether made by the heir or the vendee. This has been authoritatively settled by Lord Denman, in Riddell v. Gwinnell, 41 E. C. L. 728.

In the United States a distinction is held in several of the states between improvements made by purchasers, and the natural rise in value of the property from other causes. In Massachusetts the widow is not excluded from this casual advance. In Powell v. Monson & Brimfield Manuf'g Co. [Case No. 11,356], Mr. Justice Story, after a full review of the English and American cases, declares that the common law never excluded the widow from any improvements, and that, in the United States, she is only excluded from improvements actually made by the tenant or purchaser. This learned jurist was not aware, at the time he gave this able review of the English and American law, of the case, in 41 E. C. L., just cited. He says, that "the doctrine that the widow was thus entitled to the value, at the time her dower shall be assigned her, stands upon solid principles and the general analogies of the law. If the land has, in the intermediate period between alienation and assignment,

risen in value, the widow must receive the benefit; for, if it had depreciated, she must sustain the loss. Her title is consummate by her husband's death, and that title is, in the language of Lord Coke, 'to the quantity of the land, viz: one-third part.'" This case may well be considered the leading American case. In it, the judge fully reviews all the preceding cases, and especially considers the cases of Humphrey v. Phinney, 2 Johns. 484, and Hale v. James, 6 Johns. Ch. 258, holding the contrary doctrine of "the value of the land at the time of the alienation." In the first case, the court based its opinion upon the statute of New York, (which, by express provision, restrained dower to the time of alienation), intimating at the same time, that such was the rule of the common law, and re-asserting the same views in the last case. It is only necessary to observe, in support of the opinion of Mr. Justice Story, that since Chancellor Kent decided Hale v. James, 6 Johns. Ch. 258, the court of queen's bench, in Great Britain, has settled the controversy as to what was the common law of England, in Riddell v. Gwinnell, and the fact that there is no legal process known to the common or to the statute law by which the value of improvements made is to be ascertained, strongly strengthens the view of the common law rule as given in [Case No. 11,356]. Judge Story strongly approbates, as "high authority," the learned judgment of the supreme court of Pennsylvania, in Thompson v. Morrow, 5 Serg. & R. 290, and states that, had that case earlier fallen under his observation, he would have been spared the laborious research he had given to the question. Most carefully was the point examined and considered by Judge Tilhman in Thompson v. Morrow; tracing the common law to its source, searching through the year books from 1 Edw. to Hen. VIII., and the ancient elementary works of Littleton and his massive Commentator, and leaving no preceding American case without a full examination. All the New York cases already alluded to were revised, and the rule adjudged to be "that the widow must be endowed, according to the value of the lands, at the time her dower shall be assigned her, exclusive of the improvements made by the purchaser."

The reasoning of the judge applies to the facts in this case. I repeat his language. He says: "Dower is a right favored both by court of law and equity. A right founded on marriage, and marriage is so highly regarded as to constitute a valuable consideration for the settlement by jointure of property on the wife. Without jointure, the law gives to the wife, in case she survives her husband, one-third of his real estate seized during coverture for her life. It is inchoate at the marriage, and not consummate until the death of the husband. No act of the husband can lessen or defeat this right; neither can she be deprived of it, but by her own voluntary act,

for which the law makes many salutary provisions to prevent fraud and coercion. Her dower is in the land as found when her title is complete at the death of her husband. Where the husband has aliened during coverture, and the alienee has improved, in this country, she takes her third without estimating the improvements, and this, for two reasons: 1st, because, had the husband never aliened, the improvements might not have been made, and, 2d, because a contrary admeasurement would affect the prosperity of the country, and discourage improvements in building and agriculture." Such is the clear language of the court in this case, and adopted by Judge Story. The subsequent Pennsylvania case in 3 Pen. & W., does not conflict, but is deemed in direct affirmance of Thompson v. Morrow. With the exception of New York and Virginia, wherever the point has been raised, the same rule has been established in the other states. Ohio, Maine, Kentucky, Delaware, Mississippi and Indiana, have maintained the doctrine as deduced by Justice Story and Tilhman, so that it may be said, "that the preponderance of authority is with the rule." that the widow has her dower, according to the value of the lands, when it is assigned. 6 Ohio, 76; 2 Har. (Del.) 336; 1 Dana, 348; 3 Shepley [15 Me.] 371; 28 Me. 509; 3 How. (Miss.) 360; 5 Black, 406. The cases in New York, have already been considered in connection with the Pennsylvania and Massachusetts cases, and the case in Virginia. 4 Leigh, 509, from its being the opinion of a divided court, and mainly founded upon a statute, and the prior decisions in New York, is not of sufficient authority to shake the well considered adjudications of Powell v. Monson & Brimfield Manuf'g Co., and Thompson v. Morrow, [supra].

As this case is an ejectment for dower, and the judgment of the court is moved upon the special verdict, that judgment must not only embrace the declaration of the rule, but the process by which the rule is to be enforced. The motion calls for judgment of dower in the premises demanded, and for the appointment by the court of commissioners to admeasure the same. This appointment of commissioners is but a mode prescribed by the law of the state, of assigning the dower as declared by the judgment of the court. It is properly the process of execution. And as a question of practice, must be settled by the existing rules of the court. By the seventieth rule, the practice of this court is governed by the Revised Statutes of 1848, in all cases where no special provision is made; and these statutes direct (section 55, p. 479) that: "If an action be brought to recover the dower of any widow, which shall not have been admeasured to her, before the commencement of such action, instead of a writ of possession being issued, the court upon the record of judgment, and upon the motion of the plain-tiff, shall appoint three disinterested freeholders, as commissioners to make the admeasurement of dower to plaintiff, out of the lands described in the record. And the said commissioners shall proceed in like manner and with like obligations, as commissioners appointed by a judge of probate, to set off dower and report their action to the court for confirmation, &c., suppose such confirmation, a writ of possession, issues, &c." These commissioners inspect the premises, determine their value, and set off one-third of the same to the widow. So much, then, of the special verdict, as finds the value of the land in 1816, and in 1850, is immaterial as unnecessary. The issue, for the jury, was, whether or not the plaintiff was entitled to dower, and their finding the marriage, and seizure and death of husband, and demand of dower, comprehended their entire duty. It is for the commissioners to admeasure the value of the premises. Such was the judgment in Powell v. Monson & Brimfield Manuf'g Co. [supra], the United States court, carrying into execution the process appointed by the statute of the state. In that case it was decreed, 1st. That the widow should have her dower, exclusive of the increased value of the lands, arising from the improvements made by the alienee. 2d. Reasonable damages for the detention of dower, which (in the state ——) is a proceeding indicated by statute. St. 1838, 471, and 477. 3d. That the plaintiff recover legal costs, &c., and, 4th. That commissioners be appointed to admeasure and report as soon as practicable, setting off the widow's dower by metes and bounds according to present value.

McLEAN, Circuit Justice. As I do not entirely agree to some of the views presented by my brother judge in this case, I have thought proper to state, succinctly, my opinion. This action is brought to recover dower in a tract of two hundred and seventeen acres of land near the city of Detroit. A patent from the government to Antoine Shapeto, as appears by the county records of deeds, was offered in evidence. This was objected to as not the best evidence. The court said, the original patent or a certified copy from the land office at Washington, was the best evidence, and that as the patent was not required to be recorded in the county where the land lies, a certified copy of it could not be received in evidence. But a confirmation of the title by congress, on the report of commissioners, as appears from the 1st volume of American State Papers, published under an act of congress, was received as showing title in Shapeto. A conveyance to Santabart from Shapeto, indorsed on the copy of the patent, was then offered in evidence. To this, objection was made for want of certainty as to the tract conveyed, but the court held, that although the indorsement on its face was defective in not

describing the land, yet, by reference to the description of the land in the copy on which the indorsement was made, there was the requisite certainty, and the deed was admitted in evidence. A deed from Santabart to Johnston, the husband of the plaintiff, was then given in evidence.

The facts being submitted to the jury, it found the following verdict: "That the said George Johnston was married to the plaintiff in the year 1810; that they lived on the farm in question for one or two years, about the year 1810; that said George Johnston was seized of the property in question on the 24th of September, 1816, until the 28th of October, 1816: that he then sold and conveyed the same to Stephen Mack, and that the defendant now owns the same by mesne conveyances from said Mack; that said Johnston and wife, about the year 1820, removed and settled at Green Bay, then in the territory of Michigan, but now in the state of Wisconsin, where they remained until 1850, when said Johnston died; that the plaintiff removed to this state in the fall of 1853; that the said farm at the time of alienation was worth the sum of eighteen hundred dollars, and is now worth, embracing the improvements made since said alienation, the sum of forty thousand dollars, and that said improvements, so made after alienation as aforesaid, were worth eight thousand dollars; that said dower was demanded of defendant on the 1st of May, 1851, and also the 31st of March, 1851, according to the allegations in said declaration; and under the facts aforesaid, so found, the jury submits to the court, what judgment should be rendered on the verdict." Should the plaintiff be entitled to dower, it becomes important to inquire to what extent she may claim. Does her right extend to the improvements made on the land by the purchaser, or is she limited to the value of the premises at the time her husband aliened; or is she entitled to the increased value of the land, excluding all improvements, at the time dower was demanded?

The decisions of the courts in the different states have not been uniform on this subject. In some instances the statutes adopted may have influenced the decisions referred to, but in others the differences seem to arise from views of the common law, and the notions of policy which were entertained. In New York, in the case of Dorchester v. Coventry, 11 Johns. 510, the court laid down the rule without qualification, that the dower of the widow was limited to the value of the land at the time of the alienation, though it had risen greatly in value afterwards, exclusive of buildings erected thereon by the alienee. The same doctrine was sanctioned afterwards in Shaw v. White, 13 Johns. 179; Walker v. Schuyler, 10 Wend. 480. In Tod v. Baylor, 4 Leigh. 498, the court of appeals of Virginia held, that in equity as well as at law, the widow was to take for dower the lands according to the value at the time of alienation, and not at the time of the assignment of dower; and that she was not entitled to any advantage from enhancement of the value by improvements made by the alienee, or from general rise in value, or from any cause whatever. Where the husband died, seized of the land, and the claim of the dower is made from the heirs, it would seem to be reasonable and just that the widow should have the proceeds or possession of one-third of the premises as improved. But where the estate by the deed of the husband passed into the hands of a purchaser, the dower cannot, in justice, extend to improvements made by him; but the claim should embrace the enhanced value of the land, exclusive of improvements made by the occupant. This increase of value arises from the general progress and improvement of the country, and applies to land unimproved. This is conformably to the principles of the common law, and is the rule adopted by the courts of most of the states. It appears to be the settled rule in England, Massachusetts, Pennsylvania, Ohio, and many other states. In the queen's bench, Riddell v. Gwinnell, 41 E. C. L. 728; Powell v. Monson & Brimfield Manuf'g Co. [Case No. 11,-356]; Thompson v. Morrow, 5 Serg. & R. 289. This is in accordance with the views of Chancellor Kent and Professor Greenleaf; 4 Kent. Comm. 68, and notes 1 Greenl. Cruise, 193. The decisions in Ohio, Indiana, and other states of the same import might be cited; but it is not deemed necessary. It is made a question in the case, whether the claim of dower is governed by the revised acts of 1838 or 1846. If the rule of decision be found in the former act, which gives dower to the widow as at common law, in the lands of her husband, and places upon the same footing persons who live out of the state as those who live within it, there must be an amount of dower under the rule above stated, and this is claimed by the plaintiff. The 21st section of the act of 1846 declares, "That a woman being an alien, shall not, on that account, be barred of her dower, and any woman residing out of the state shall be entitled to dower of the lands of her dec'sd. husband, lying in this state, of which her husband died seized." The 24th and 25th sections of the same act define, to some extent, the dower rights; but if the 21st section governs the case, there can be no dower, as the husband lived in the state of Wisconsin at the time of his death, and was not seized of the premises in controversy. From the finding of the jury, it appears that George Johnston, the husband of the plaintiff, was seized of the premises from the 24th of September, 1816, to the 28th of October following, making one month and four days; that Johnston sold the land to Mack, and about the year 1820, he removed to Green Bay, with his family, then in the territory of Michigan, but which was afterwards included in the state of Wisconsin, where the husband died in 1850.

Two grounds are urged by the plaintiff's counsel, as showing the inapplicability of the act of 1846: 1st. It is said that law has not been adopted by any act of congress, or by any rule of this court. 2d. That the act of 1846, from its language, was not intended to operate retrospectively, and that if such were the intentions of the legislature, this court would not give effect to it. The first objection is answered by saying, that the 21st section of the act of 1846 is not a rule of practice, but of property, and as such is obligatory on this court, without adoption. The 34th section of the judiciary act of 1789 provides, "That the laws of the several states, except where the constitution, treaties or statutes of the United States shall otherwise provide, shall be regarded as rules of decisions in trials at common law in the courts of the United States, in cases where they apply." The second objection urged, if the right arises under the 21st section, is not without difficulty. Dower existed under the common law, and to establish the right, it was necessary to show seizen of the husband, his marriage with the claimant, and his death. But almost all the states of the Union have regulated dower by statute. It is not easy to define the right of dower before the death of the husband. In his Commentaries (volume 4, p. 50), Chancellor Kent says: "Dower is a title inchoate, and not consummate till the death of the husband; but it is an interest which attaches on the land as soon as there is the concurrence of marriage or seizen." Marriage without seizen would not create this right, nor would seizen without marriage create it. Both these must concur, to give the incipient right to dower. But still it is not only an inchoate right, but contingent. It depends upon the death of the husband. If he survive his wife, she has no right transmissible to her heirs, nor during the life of her husband can she give it any form of property, to her advantage; nor even after the death of the husband, can she convey her dower. until it shall be assigned to her. It is true the statute gives the wife an interest in the land of her husband, on the contingency that she shall survive him, and of which no act of the husband can divest her. But still it is not, in a proper sense, a vested right. So long as the husband shall live, it is only a right in legal contemplation, depending upon the good conduct of the wife and the death of the husband. Until the death of the husband, the right, if it may be called a right, is shadowy and fictitious, and, like all rights which are contingent, may never become vested. The marriage, seizen, and the death of the husband, must concur to create a right in the wife, which can be reached by any legal principle, for her protection. And the question is argued, whether this right be of a character to place it beyond the reach of legitimate action. If Johnston and wife had remained residents of Michigan until the death of the husband, the wife, it is admitted, would have had a right of dower in the land; but thirty years before the death of the husband, they removed to a remote part of the territory, which is beyond the state of Michigan, and for many years has been within the territory or state of Wisconsin. The 21st section of the act of 1846 so far modified the right of dower as to limit it to lands of those who live out of the state of Michigan, and who own lands within it, so as to require seizen in the husband at the time of his death. No objection is made to this law in regard to subsequent rights of dower, but it is earnestly contended it cannot operate in any case where marriage and seizen concurred before the law was passed.

There is nothing in the constitution of the United States which prohibits a state from passing a retrospective law. In Saterlee v. Matheson, 2 Pet. [27 U. S.] 380, it was held, that no part of the constitution of the United States applies to a state law, which divested rights vested by law. That was a case in which, on an action of ejectment, the supreme court of Pennsylvania held that the relation of landlord and tenant could not exist between persons holding under a connectical title in that state. The legislature of Pennsylvania declared by an act, that such relation should be held to exist, and the supreme court of Pennsylvania reversed their former decision, and held that the relation of landlord and tenant did exist under the law. This case was taken to the supreme court of the Union. which affirmed the judgment of the state court. Similar doctrines have often been advanced in the supreme court. The mode of relinquishing dower is provided for by statute, and varies in the different states. A statute of Pennsylvania declares valid all deeds made prior to September 1st, 1836, though the certificate of acknowledgment be defective. A similar statute was passed in South Carolina (Purd. Dig. 205). both of which have been held valid by their respective courts. Retrospective laws have been passed in many of the states, and in all cases, it is believed, effect has generally been given to them where they did not impair the obligation of contracts, and in some cases, as in the instance above cited, these laws have modified vested rights. I am aware of the impolicy and, indeed, danger of such legislation, and I have been opposed to it, except where the acts were more clearly just and related to the remedy. Where an objection to such laws is made, it is necessary to consider what effect must be given to them, as on that their validity may depend. But the decision of this point is unnecessary, as the repealing clause in the laws of 1846 provides that the acts repealed by it "shall not affect any act done, or right accrued or established, or any proceeding, suit or prosecution had or commenced in any civil case previous to the time when such repeal shall take effect; but every such act, right and proceeding. shall remain as valid and effectual as if the provision so re-

_pealed had remained in force." The concurrence of marriage and seizen, having taken place long prior to the law of 1846, those acts are within the reasoning, and of course, the rights growing out of them are not affected by the repealing act. The dower in this case will be in one-third of the land, exclusive of the improvements, whether it be assigned in the land or by an estimate of its annual rents. Judgment for dower as estimated, and the appointment of commissioners, &c.