GEORGE BUCK *v.* BENJAMIN SHERMAN, ELIAS B. SHERMAN AND JAMES SHERMAN, JR.

No man's rights can be affected by legal proceedings without notice of them, actual or constructive. *Semble.*

The "Act to provide for the transfer of real estate on execution, and for other purposes," approved February 17, 1842, (S. L. 1842, p. 135,) does not authorize an appraisal and set off of mortgaged premises in satisfaction of the mortgage, without previous proceedings to foreclose, either in equity or by advertisement.

Fraud in fact, or an express intent to commit fraud, is not necessary in order to render a conveyance fraudulent as against creditors. It is sufficient, if the effect of the conveyance is to delay or hinder creditors in the collection of their debts.

A, who had recovered a judgment against B for $2,672.79, in an action upon contract, and had issued execution thereon, and levied the same upon real estate of B, which was encumbered by a mortgage executed by B to C, during the pendency of

Buck *v.* Sherman.

A's suit against B, and conditioned for the payment of $6,556.67, in two years, with interest, filed a bill in chancery against B and C, to set aside the mortgage as fraudulent and void as against him. On the hearing, which was upon bill and answers, it appeared that, at the time of the execution of the mortgage, C was ignorant of B's indebtedness to A, and of the pendency of the suit for the recovery thereof; and that the consideration of the mortgage was C's execution of his five promissory notes, payable to B's order, in one and two years, to the amount, in all, of the sum secured by the mortgage, and his delivery thereof to B, for the purpose of enabling B to raise money by their negotiation: whether the notes had in fact been negotiated by B, did not appear; and, both B and C denied all fraudulent intent in executing the mortgage. *Held*, that the facts did not sufficiently establish the fraud, to authorize the court to decree a release of the mortgage.

Fraud will not be presumed upon slight circumstances: the proof should be so clear and conclusive as to leave no rational doubt on the mind as to its existence.

APPEAL from Chancery. The object of the bill in this case was to remove a cloud upon the title of premises levied upon by virtue of an execution in favor of Buck, the complainant, against Benjamin Sherman. The cause was heard upon the bill, supplemental bill, answers of the defendants, and replications thereto.

The case was substantially as follows: The complainant, holding the promissory notes of Benjamin Sherman, to the amount of about $2,500, which were due and unpaid, on the 1st May, 1840, instituted a suit against him in St. Joseph Circuit Court, for the recovery thereof, and such proceedings were thereupon had, that, September 22d, 1841, he recovered a judgment against said Benjamin, in said suit, for $2,647.17 damages, and $25.80 costs; on which judgment, execution was issued to the sheriff of St. Joseph county, and, on the 24th day of September, 1841, levied upon certain real estate of said Benjamin, situated in said county.

While the above suit against Benjamin Sherman was pending, viz. March 13, 1841, he executed to his brother, Elias B. Sherman, (both said Benjamin and said Elias B. being at the time residents in St. Joseph county,) a mortgage upon the same premises levied upon by virtue of the

execution in favor of the complainant, conditioned to se-
cure the payment of $8,000, in the manner following,
viz : The sum of $1,443.43, with interest, on the 14th day
of March, 1842, (being the balance of a note given by said
Benjamin to James Sherman, Jr., dated November 14,
1836, and payable two months after date ;) and also, the
further sum of $6,556.57, and interest, within two years
from the date of the mortgage, according to the condition
of a certain bond executed by said Benjamin to said Elias
B. bearing even date therewith.    The mortgage was duly
recorded March 15, 1841.

The complainant's bill charged that this mortgage was
a mere voluntary security, given without consideration, in
fraud of the complainant, and with a view to hinder, de-
lay and prevent the collection of complainant's debt
against Benjamin Sherman; and alleging that it was a
cloud upon the title of the premises, and prevented the
sale thereof on the execution in favor of the complainant,
prayed that Elias B. Sherman might be decreed to release
the premises from the operation of the mortgage.

The defendants in their answer severally denied the
fraud charged in the bill.    Elias B. and James Sherman,
Jr. both denied that at the time of the execution of the
mortgage, they had any knowledge of the indebtedness
of Benjamin Sherman to complainant, or of the suit pen-
ding in favor of complainant for the recovery thereof.
It appeared from the answers that, as to the first instalment
of $1,443.43, the mortgage was executed to and held by
Elias B. as trustee for James Sherman, Jr., who resided
in Cayuga county, New York, for the purpose of securing
payment of this sum actually due from Benjamin to James
for money lent; and that, as to this sum, the mortgage was
executed in good faith and for a valuable consideration.
But it further appeared that the sole consideration for se-
curing by the mortgage the payment of the remaining

$6,550.57, the second and last instalment named in the condition thereof, was the execution by Elias B. Sherman of his five several promissory notes, amounting in all to the sum secured by said last mentioned instalment, payable to Benjamin Sherman, some of them in one and others in two years from date, and the delivery thereof to said Benjamin for the purpose of enabling him to raise money by negotiating them. It did not appear in the case whether or not these notes had ever been in fact negotiated.

As appeared from the supplemental bill and answer thereto, after the original bill was filed, to wit: on the 6th day of March, 1843, Elias B. Sherman, with the aid of the sheriff of St. Joseph county, pretending to proceed under " an act to provide for the transfer of real estate on execution and for other purposes," approved February 17, 1842, (S. L. 1842, p. 135,) summoned three appraisers, who, having entered upon and examined the premises described in the mortgage, appraised the same, and set off to said Elias B., by metes and bounds, such portion thereof as was sufficient to amount, at two-thirds of its appraised value, to the sum then due on the first instalment of the mortgage, and the costs of appraisal. The premises so set off were accepted by Elias B. in full satisfaction of said first instalment; and a certificate of such appraisal was made out and signed by the appraisers, which, with the acceptance of Elias B. endorsed thereon, was duly filed in the office of the register of St. Joseph county. No notice of these proceedings was ever given to the complainant, and they were had without any previous proceedings to foreclose either in equity or by advertisement. The object of the supplemental bill was to vacate and set aside these proceedings as irregular and void.

On the hearing in the court below, the Chancellor made a decree dismissing the bill generally. To reverse which decree the complainant appealed to this court.

*C. Dana* and *L. F. Stevens*, for complainant.

*Stuart & Miller*, *J. S. Chipman* and *N. Bacon*, for defendants.

WHIPPLE, J., delivered the opinion of the Court.

The complainant having acquired a specific lien on the real estate described in the bill, his right to invoke the aid of a court of chancery to set aside the mortgage executed by Benjamin to Elias B. Sherman, is unquestionable, if, from the facts disclosed on the hearing, it shall be apparent that the mortgage was executed with a view to defraud creditors. Such a mortgage constitutes a cloud on the title, to remove which the complainant has a right to appeal to the powers with which courts of equity are armed, and which are liberally and beneficially exercised in a large class of cases. Was, then, the mortgage in question a device by which the rights of creditors were delayed, hindered or defrauded? If so, it must be adjudged void. The solution of this question decides the case. In that class of cases within the range of which the present one falls, it is to be observed, that it is not required by the complainant, that fraud in fact, or an express intent to commit a fraud, was contemplated. It is sufficient if it appears from the whole case that the effect of the acts of the defendants was to delay or hinder creditors in the collection of their just debts. The determination of the question before us is involved in some difficulty, growing out of the somewhat peculiar and complicated character of the transactions disclosed by the bill and answers. So far as the mortgage was intended to secure James Sherman, Jr., the transaction is stripped of all doubt and difficulty. The answers of all the defendants so far as they are responsive to the allegations contained in the bill, must be taken as true, and these answers show

Buck *v.* Sherman.

a *bona fide* debt due from Benjamin to James, at the time of the execution of the mortgage.

But can the set-off of the real estate to James in satisfaction of this debt be sustained? It appears that no proceedings were had to foreclose the mortgage, either in chancery or by advertisement, but that the whole proceeding was had between Elias B. and Benjamin Sherman, the former representing his brother James. It seems also, that the set-off was made after the levy by the complainant and the filing of the original bill. This feature of the case is open to animadversion: it bears on its face an unfavorable aspect. No notice was given to the complainant of the proceeding, although he was interested in the real estate under the levy. It was proper that his rights, if any he had, should be respected. The principles of natural justice, and the law of the land will not sanction such a proceeding. No man's right can be legally affected without notice, actual or constructive. But was it competent, in a legal point of view, for the parties to dispose of the real estate named in the mortgage? In other words: Does the statute under which the proceeding was conducted, authorize the set-off of real estate which is covered by a mortgage, without first proceeding to foreclose, either in equity or by advertisement? I think it does not. It is not to be disguised that the provisions of the act under which the parties proceeded, are involved in some mystery. It bears on its face some of the strong features by which the legislation of that day was characterized; but we think that a comparison of the first and sixth sections evidently contemplate a foreclosure of a mortgage, before the provisions of the second section can become operative. Where a statute admits of two constructions, one reasonable and sensible, and the other unreasonable and insensible, the duty of courts is obvious. That construction which is consistent with good sense and

sound reason must be adopted.   We think, therefore, that all the proceedings had under the provisions of the act in question, must be set aside, and held for nought.   The effect of this decision will be to leave the parties in the same plight they were in before such proceedings were instituted.

The next question to be considered is, whether the mortgage is fraudulent so far as it purports to secure Elias B. Sherman against the several promissory notes mentioned in the pleadings.   Without expressing any opinion as to whether the transaction in this respect was fraudulent *in fact*, on the part of Benjamin, we cannot *presume*, under the aspect which the case now assumes, that a fraud was perpetrated by Elias B.   The complainant chose to rely upon the case made by the bill and answer; by that case he must abide.   The answers leave the notes in the hands of Benjamin.   Whether he has negotiated them or not, does not appear.   If he has, then Elias B. ought to be protected against eventual liability upon them. If not, the complainant has an appropriate remedy by which to prevent their negotiation.   In order to authorize us to declare the mortgage void so far as it was intended to indemnify Elias B. Sherman, it must appear that the transaction was fraudulent on the part of both Elias B. and Benjamin.

While the stern principles by which courts of equity are guided, will be applied in all their strictness to cases of fraudulent conveyances, where the fraud is clearly established, yet we cannot *presume* that fraud actually exists upon slight circumstances.   The proof should be so clear and conclusive as to leave no rational doubt upon the mind as to its existence.   It is not our purpose to express any opinion upon this part of the case, as respects the motives or intentions of Benjamin; but we are not permitted to declare that the conduct of Elias B. was

Buck *v.* Sherman.

fraudulent.   All doubt as to the true character of the transaction could have been easily explained, had the parties thought proper to have shed more light upon the notes in question.   If the notes were intended for the purpose stated in the answers, it would have been more natural that Elias B. should have stood in the relation to them of an endorser, rather than a maker.   But, above all, it is somewhat unaccountable that the parties observe a studied silence respecting the disposition made of them.   It would have been more satisfactory to us, had the defendants, in their answers, disclosed the fact that the notes had been used for the purposes stated in those answers.   They having failed to do so, it was incumbent, under the circumstances, that the complainant, in order to show the transaction fraudulent on the part of Elias B. to have proved that they had never been negotiated, or other facts or circumstances tending to show that the notes and mortgage were intended to protect the real estate of Benjamin from execution.

Upon the whole, we are of opinion, that the decree of the Chancellor, dismissing the bill generally, must be reversed : And we order and decree further, that the proceedings had under the provisions of the act entitled "An act to provide for the transfer of real estate on execution, and for other purposes," approved February 17, 1842, be vacated and held for nought.

The effect of this decree will be simply to vacate the proceedings had under the act of 17th February, 1842, and to withhold all other relief under existing circumstances.   This will enable the complainant to institute such further proceedings as he shall deem proper, with a view to the satisfaction of his judgment.

*Decree reversed.*