## Joseph Greiner v. Mary Klein.

*Dower: Partition: Sales: Parties.* A sale under a decree in partition proceedings to which a married woman was not made a party but her husband was, will not bar her right of dower; such a sale is analogous to a private sale or alienation by the husband alone.—CAMPBELL J., dissenting.

*Partition: Parties: Dower.* Under our statute of partition (*Comp. L.*, § *6266-6352*) a wife whose husband is seized of an interest in the lands may be made a party, and if she is not, her inchoate right of dower will not be affected.—CAMPBELL J., dissenting.

The court of chancery has power in partition proceedings to guard this inchoate right of dower where the wife is made a party, without departing from its principles.

*Statute construed.* Our statute of partition having been adopted in substance from that of New York, it is presumed to have been so adopted with the construction which had been given to it by the courts of that state, which was in accordance with the principles above stated.

*Heard July 10. Decided October 8.*

Error to Wayne circuit.

*George H. Prentis* and *Hoyt Post,* for plaintiff in error.

*VanDyke & Brownson,* for defendant in error.

GRAVES J.

This was ejectment by defendant in error to recover her dower in certain lands which her late husband, Philip Klein, inherited from his father, Jacob Klein.

Jacob Klein, the ancestor, died in September, 1845, seized of the premises and leaving a widow, Mina Klein, and a son, the before mentioned Philip Klein. After the death of Jacob, the ancestor, and in 1846, another son was born, who received the name of Jacob. These sons inherited the land subject to the dower right of their mother, Mina Klein, and the three were tenants in common. In 1849 the widow, Mina Klein, intermarried with one Charles Wenks, and is still his wife. Philip, her eldest son, married the plaintiff below, and died at East Saginaw, in June, 1871.

These facts were proved on the trial and were not disputed, and they made a *prima facie* case for judgment in favor of Mrs. Klein. This is not questioned. The subject for discussion arose upon the ground taken on the part of the defense. The plaintiff in error who was defendant below, proved by himself, that he bought the tract left by the elder Klein, of Charles Wenks in 1867, for $6,400, which was a fair price; that he made the purchase in good faith, in ignorance of any claim against the land, and still holds as such purchaser. He then proved, by Wenks, that he bought the tract in 1867, at a sale by a circuit court commissioner, under a decree of the circuit court for the county of Wayne in chancery, for something over $6,400, and that he sold to Griener as stated by him, and that the price was a fair one. Griener also submitted evidence of guardian accounts against Philip and Jacob Klein, as allowed in the probate court for Wayne county, which represented an unpaid balance on the 8th of August, 1866, against Philip of $2,813 58, and against Jacob of $3,473 58.

He then offered in evidence certain proceedings in partition under the statute, taken in the circuit court for the county of Wayne in chancery, by Philip Klein as complainant, against Jacob Klein and Mina Wenks, defendants, to partition the tract, and in which case the whole land was sold under a decree therefor. The defendant in error, Mrs. Klein, was not a party to that case, and the evidence appears to have been offered to establish that the decree and sale barred her right.

The evidence was excluded on objection, and this ruling is the only matter complained of. There is nothing in the record to indicate that this rejected proof was proffered with any other view than to make out by it that Mrs. Klein's dower in the land was extinguished by the decree and sale in partition, and no suggestion has been made here by counsel that it was intended or supposed to be available for any thing else. As there is nothing in the character of the controversy, or any thing relating to jurisdiction, to jus-

tify our departure from the usual course of deciding according to the view taken of the points actually made, rather than upon a ground not presented below or claimed on review, I think we are not warranted in seeking to convict the judgment of error, by supposing some ground for the admission of the excluded evidence which the complaining party does not seem to have suggested, or to have thought proper or consistent with the real facts when he made his offer, and a ground, moreover, which was not passed on by the court below, and is not put forward here.

Hence, if it be now said that the statute (*Comp. L.*, § *4275*) makes an alienation by the husband during coverture a circumstance affecting the allowance of dower, and that the evidence was admissible in the aspect of the case shown by that provision; or if it be said that it is possible in carrying out partition proceedings to set money proceeds from one portion against lands allotted for another, to produce equality of division, and that the evidence was consequently admissible, the answer is that the evidence was not offered on any such ground, and that no question of the kind upon its propriety is introduced into the case.

Moreover, the circumstances, as exhibited, show, I think, that the true state of facts afforded no basis for the admission of the evidence on any such theory. The sale in partition was of the entire tract, and for a round sum, and there was no allotment of land against money, and the provision regulating the allowance of dower in case of alienation by the husband provides simply that the lands shall be *estimated, in setting out dower,* according to the value at the time of alienation, *if they have been enhanced in value subsequent to such alienation.* It was not claimed, and it does not appear, that any such enhancement had occurred here. There was, then, no basis for the evidence on this hypothesis. It is not unworthy of notice in this connection that this statute regulating the allowance of dower in case of alienation by the husband during coverture was intended to give a rule to govern the commissioners in set-

ting out the dower, and not to affect the trial of the right to dower.

Whether the inquiry might not be proper at some stage, before the court trying the right, in a case appearing to involve or alleged to involve the conditions specified in the statute, in order, and simply in order, to obtain a right basis for the frame of the commission to be issued to the commissioners, it is quite unnecessary to decide, until some case is presented which requires it.  It may be that the inquiry would regularly be for the court after verdict establishing the right, and not earlier.  The Federal court in this state decided in 1855 that the jury had nothing to do with this question of value on the trial of the right in ejectment, and that it was for the commissioners to admeasure the value.—*Johnston v. Vandyke, 6 McLean, 422.*

If we were permitted to indulge in conjecture, either to impugn or to sustain the exclusion of the evidence of sale in partition, there would be no difficulty in supporting the exclusion.  But we are not at liberty to suppose something not hinted at by the record, to sustain or overturn the judgment.

Passing these considerations, we come to the point actually presented by the case, and it is this:  Was Mrs. Klein's dower right extinguished by the judicial sale in the case in which she was not a party ?

The affirmative of this proposition must be supported by those who maintain that the offered evidence was wrongly excluded, and it can be supported only by establishing that the legislature intended that her right should be cut off through a sale in partition proceedings carried on without her being a party, or being represented in any way.  And if the result indicated was meditated by the legislature, the design must be looked for in the law respecting partition, since it must be admitted that there is no other law favoring such a consequence.  And if the law regulating partition is required to operate in that manner, it must be admitted to be a law of an exceptional and unusual charac-

ter, and in opposition to the general spirit of our legislation.

What is it in legal contemplation that a married woman has relative to lands of which her husband is seized during the continuance of the matrimonial union? The law is positive that " the widow of every deceased person shall be entitled to dower, or the use during her natural life of one-third part of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage, unless she is lawfully barred thereof."—*Comp. L.*, § *4269*.

The state of marriage, and the seizin of the husband of an estate of inheritance during the marriage, are two of the facts in the series which constitute her title, and the existence of these two facts, which commence her title, confer upon her a valuable right.—*Newhall v. Lynn Five Cents Saving Bk., 101 Mass., 428.* It is a right favored both by courts of law and equity.—*Thompson v. Morrow, 5 S. & R., 289.* It has been deemed sufficient to warrant a bill by her to redeem from a mortgage given by herself and husband,—*Davis v. Wetherell, 13 Allen, 60,*—and on the strength of it the court, in *Burns v. Lynde, 6 Allen, 305,* sustained her bill to set aside a deed which she had signed in blank, and which purported to release her right. In *Kelly v. Harrison, 2 Johns. Cases, 29,* the supreme court of New York decided that the right was one which the separation of this country from the British Empire by the revolution did not determine, though as a consequence of that war and separation the wife became an alien. And in *Cranson v. Cranson, 4 Mich., 230,* our predecessors held that where the husband, before marriage, made conveyance to prevent the right from attaching, it was of sufficient value to support a writ by her to assert it after the death of the husband. Indeed, the evidence is everywhere abundant to show that the law has not only regarded the right as one of appreciable and legal value, but that the courts have ever looked upon it with favor, and have always recognized it as something worthy and sufficiently tangible

to be guarded and protected. Among other cases, see *Mills v. Van Voorhies, 20 N. Y., 412 ; Swaine v. Perine, 5 Johns. Ch., 482 ; Tabele v. Tabele, 1 Johns. Ch., 45.* It is a principle universally admitted, that the husband cannot deprive her of it, and that she can only be divested by authority of the state, or by or in consequence of her own voluntary act.

Before acceding to the view that such a right may be extinguished through a suit in partition by the husband, instituted and carried to completion without her being a party or being represented, and without her having any chance to be heard, we ought to find the rule of law compelling it, most clear and decisive.

It may be said that the provisions of the partition. law are not so framed and arranged, unless we go outside and supplement the law by judicial legislation, as to make it practicable to guard the wife's right, whether she be a party or not, where a sale becomes necessary.

Were this to be admitted, it would not follow that we should assume the legislature to have intended that the right should be invaded and destroyed in her absence. At the utmost, nothing further could be inferred than that having made no adequate provision to protect her right in the event of a sale, it was not designed that a sale should interfere with the right.

It is doubtless true that whichever way we turn we are exposed to much embarrassment. But the difficulties, however formidable, which array themselves against the view that she may be a party and receive protection, are merely difficulties connected with remedy and procedure, while those which attend the theory that her right may be taken from her without her being a party or in a situation · to · be heard, are such as undermine the substance of justice. "No man's right," say the court in *Buck v. Sherman,* "can be legally affected without notice, actual or constructive."—*2 Doug., 176.* The rule is believed to be universal, that a decree in equity is not binding on one· not a party or in

any way represented by, or in privity with a party.—*Brown v. Wyncoop, 2 Blackf., 230; Shaw v. Hoadley, 8 Blackf., 165; Brainard v. Cooper, 6 Seld., 356; Com. v. Cambridge, 4 Mass., 627; Bradstreet v. Neptune Ins. Co., 3 Sum., 600; Mallow v. Hinde, 12 Wheat., 193; Barney v. Baltimore City, 6 Wall., 280; Hunt v. Wickliffe, 2 Pet., 201; Giffard v. Hort, 1 Sch. & Lef., 386; Wheeler v. Morris, 2 Bos., 524.*

If driven to choose between a denial or subversion of justice and a mere amplification of a remedy in equity in perfect harmony with the principles which govern the court in settlement cases and others similar, I think we ought not to hesitate about adopting the latter. Recurring to the statute of partition, I think it is difficult to read it without feeling that it was not meant to cut off the wife's right in her absence as a party. The complainant is required to set forth in the bill the right of "every person who, by any contingency contained in any devise, grant, or otherwise, may be or become entitled to any beneficial interest in the premises."—*Comp. L.,* § *6269.*

This provision certainly, I think, includes the right possessed by the wife, and I find nothing elsewhere to lead me to think that the clause would be satisfied by a reading which did not include it. Why require this right to be set forth, if its existence was not to affect results, and if it was intended that the right should be wholly ignored? But the next section provides that every one having any such "interest" may be made a party. Now this section was intended to cover the same ground as to parties as that covered by the preceding section as to rights and interests, and it had for its obvious purpose a requirement to bring in as parties all the owners of all the rights and interests which the preceding section ordered to be set forth.

These regulations appear to me to cover the case of the wife, and they evince a purpose in the legislature to provide in broad terms for bringing in every one possessing a right liable to be disturbed and so substantial as to be capable of influencing the result. And this anxiety for the

bringing in of all persons having rights or interests is further manifested by the cautious insertion of explicit directions for making and notifying new or additional parties.

Proceeding to another part of the statute, it will be observed that it is very precise in declaring who shall be bound by the final decree, when the premises are divided. These regulations are contained in § *6296* and the section next following. By the first of these sections the decree is made conclusive on, *first,* all parties named therein, and their legal representatives, who shall at the time have any interest in the premises divided, as owners in fee, or as tenants for years, or as entitled to the reversion, remainder or inheritance of such premises, after the termination of any particular estate therein, or who, by any contingency contained in any will or grant, or otherwise, may be or become entitled to any beneficial interest in the premises, or who shall have any interest in any undivided share of the premises as tenant for years, for life, by the courtesy, or in dower; *second,* all persons interested in the premises, who may be unknown, to whom notice shall have been given by personal service, or by publishing the same as is hereinbefore directed; and, *third,* all other persons claiming from such parties or persons, or either of them.

This section passes over exactly the same ground relative to rights and interests as that comprehended by the previous provisions, which regulate the setting forth of rights and interests, and make it needful to bring in as parties the owners of such rights and interests. And unless the former provisions include the right of the wife, it follows that this section, which ordains what rights and parties will be bound, will not apply to it. And, on the other hand, if this section is held to apply to the right of the wife, it can only be done on principles and reasoning which must make the other provisions include the wife and her right. The second provision is precisely co-extensive with the former ones, and the effect which it gives to the decree upon parties and rights is just such as must be

legally appropriate as the end and consequence of proceedings begun as directed and regularly carried out.

Now if these various provisions as to what rights are to be set out, as to the persons to be made parties, and as to the effect of the decree when the land is divided, do not include the case of a married woman in the position of Mrs. Klein, then she would not be precluded even by decree and partition of the land.

This result is rendered unavoidable by the terms of the section immediately following that last quoted from. For it declares explicitly that such decree and partition shall not preclude any person except such as are specified in the last preceding section, from claiming any title to the premises in question, or from controverting the title or interest of the parties between whom such partition shall be made. —*Comp. L.*, § *6297*.

If, then, the statute does not intend that a married woman in the position of Mrs. Klein may be a party, if her condition is not included, it is then plain, from the terms of this same statute, that she cannot be "precluded" even when there is no sale, and where nothing more is done than to reduce the holdings in common to holdings in severalty. And it will follow that no decree and partition are possible under this statute, which will preclude a wife in the situation the defendant in error occupied. If, however, as I think, the right of the married woman is within the description given in the statute, and she may be made a party, and her right as connected with the rights of others be justly dealt with, then she may be reached by being made a party, and on being made a party she may be bound by the decree.

Leaving this branch of the statute, and turning to that portion which relates to a sale, we come to the provisions which declare the effect to be given to the conveyance which is authorized. These provisions are contained in two sections (*Comp. L.*, §§ *6321, 6322*), and as they are important, they are here quoted.

"Such conveyances, so executed, shall be recorded in the

county where the premises are situated; and shall be a bar, both in law and equity, against all persons interested in any way, who shall have been named as parties in the said proceedings, and against all such parties as were unknown, if notice of the order to appear and answer shall have been given by such publication or service of notice as is hereinbefore directed; and against all other persons claiming from such parties, or either of them."

"Such conveyances shall also be a bar against all persons having specific liens on any undivided share or interest therein, who shall have been made parties to the proceedings; but no creditor having any such specific lien shall be affected by such sale or conveyance, unless he shall have been made a party to the proceedings."

In providing in terms that parties and privies should be bound, the legislature left it to be implied that no others should be, and it seems impossible to read the chapter without seeing in every part of it the evidence of a design to adhere to the principle imbedded in our jurisprudence, which requires that a person shall have a chance to be heard before any valuable right of his shall be extinguished by or through judicial action. In view of the provisions which have been cited, and their objects and subjects, it may be laid down with confidence that we should find in them, if anywhere, the marks of a design to disregard this principle, if it was meant to be disregarded. But we do not find any thing of the kind. On the contrary, they afford strong evidence of an opposite purpose.

And this is the material consideration. That the course to be pursued to guard the woman's right is not delineated, that difficulties will intersect the path of the court in seeking to protect it, is a matter of secondary importance. If the end is required, if the right is to have protection, the means must be found. Such is the result to which I am led, upon general principles, and on a survey of this statute. But there is still another consideration not to be overlooked.

This statute of partition, except some slight changes
and additions not affecting our present inquiry, was brought
into our code in 1846, and we took it in substance, and for
the most part in the very words, from the revision made in
New York in 1830.     And in adopting it in 1846, it is
reasonable to assume that our legislature recognized and
accepted the doctrine there settled touching the practica-
bility of making the wife a party, and as to the effect of
her not being one.—*Cooley on Const. Lim., 52,* and cases
cited.

Now, as early as 1832 the chancellor of New York
decided that the wife was a competent party in partition
under this law, and that unless she was made a party her
right to dower would not be cut off by decree and sale.—
*Wilkinson v. Parish, 3 Paige, 653.* It is true that, in 1833
one of the vice chancellors held that the right of the wife
could not be cut off by decree and sale, even if she were a
party; *Mathews v. Mathews, 1 Ed. Ch., 565 ;* and in *Jackson
v. Edwards* in 1839 where the purchaser refused to accept
conveyance on the ground, among others, that the wife,
though a party, was not barred, the same vice chancellor
adhered to his decision in *Mathews v. Mathews.* But the
chancellor overruled this doctrine and held that when she
was joined as a party her right was capable of being pro-
tected through control of the proceeds of the sale, and that
the decree could bind her and preclude her from setting
up her right against the land.—*7 Paige, 386.* In this view,
it appears from a note to the case, Chief Justice Savage
concurred.     In the same year the case was carried by
appeal to the court for the correction of errors, where but
two opinions were given, one by Judge Bronson, and the
other by Senator Verplanck, an able man.     Judge Bronson
was of opinion that the right was one of sufficient value
to be regarded, and that it could not be extinguished by
sale on partition in a case in which she should not be a
party, but entertaining some doubt as to the practicability
of working out protection for her in partition, he was in-

clined to question whether her right could be excluded from the land, even in case of her being a party. Senator Verplanck agreed that her right could not be extinguished by a proceeding to which she was not a party, but he concurred with the chancellor and Judge Savage, in holding that it could be if she were a party.—*Jackson v. Edwards, 22 Wend., 498.*

From this summary it will be seen that the judges were all agreed that the right could not be extinguished by a proceeding to which the wife was not a party, and that they only differed as to whether that result could be attained, even if she were a party. Upon the point that her right would remain if not made a party, the law was considered as fully settled and closed from 1832 to 1846, when we transferred the statute to our code, and the same view has ever since been adhered to.—*Willard's Eq., 703; Mills v. Van Voorhies, 20 N. Y., 412; Waite's Table of Cases, 310.* Whether the theory or scheme propounded by Chancellor Walworth, for a transfer of the right to the fund produced by the sale, was appropriate, or even the wisest, is wholly beside the present question.

It is true that in 1840 the New York legislature amended the general partition law, and added regulations in the spirit of the view of Chancellor Walworth relative to the way of working out the protection everybody admitted to be already due to the right, but this is a consideration in no respect important. That the wife's right could not be cut off without her being a party was fully, deliberately and notoriously settled under and upon the law as it stood before and as we accepted it. And the main purpose of the amendment was to clear away doubts on another point and give legislative sanction to the doctrine judicially announced, that the right could be transferred to the fund raised by the sale, and absolutely severed from the land, through proceedings in partition embracing the wife as a party. No inference certainly can be drawn from it under the light shed by adjudications, that any one supposed that

the right could be destroyed in the absence of the wife as a party.

The examination might be extended and many additional reasons given for the result. But this opinion has been already carried to greater length than was intended, and much greater perhaps than it should have been. But the importance of the question, and some difference of views among the members of the court, have been thought to justify some latitude of discussion. After the best consideration I have been able to give to the subject, I arrive at the conviction that the sale in partition, when the wife was not a party, was analogous to a private sale or alienation by the husband alone, and was not a bar to her right; that we are not authorized to say that the legislature meant to cut off the right through a sale in partition proceedings to which the wife was not a party, and that the court of chancery has power in partition proceedings to guard her right without departing from its principles. It is due to candor to say, that when the case was submitted to the court, my mind was inclined the other way. But further reflection has led me to the result stated, and it follows that in my view the judgment should be affirmed, with costs.

COOLEY, J., and CHRISTIANCY, Ch. J., concurred.

CAMPBELL, J.

The most important question presented by the record in this cause, relates to the effect of a partition sale upon the rights of a married woman whose husband is made a party to a partition suit of lands in which he is tenant in common,—the wife not having been made a party, and surviving her husband.

I think there can be no doubt the court erred, on any theory of the case, in shutting out evidence of the partition proceedings altogether. By so doing, he left it to the jury to be disposed of as if the husband had died seized. The partition sale certainly operated as an alienation by the

husband, whether it conveyed the wife's dower or not; and the dower in lands aliened during coverture is allowed on a different basis from that in lands of which the husband died seized.—*Comp. L.*, § *4275*. It is also not impossible in cases of sale, that more or less of the cash proceeds may be distributed so as to make equality of partition in such manner that one tenant may get more than his share of land, by having paid or allowed against it a portion of the money proceeds. In such case the widow's dower in the land which he gets might be all or more than all she would have had in case there had been no sale. I can see no ground for excluding the partition proceedings, on any theory of the right of dower.

But the main question, and the one which will most affect the parties, is whether the sale extinguished the wife's prospective claim, so that after her husband's death it cannot be recognized.

There is some difficulty in arriving at any result which will not present perplexities. But upon the best consideration I have been able to give the subject, I am compelled to the conclusion that the dower is extinguished. And I think that without further statutory provisions, the result must be, either that the right is destroyed by the sale, whether she was or was not a party to the proceedings, or else that it cannot be destroyed in any event, even if she is made a party.

In New York, and in some other states, there are now statutes providing directly for such cases. But prior to 1840 the decisions were conflicting, and it was impossible to tell just what the law was. The view of Chancellor Walworth was that the statutes provided sufficiently, both for ascertaining and protecting such a right, and required the wives of tenants in common to be made parties. But there was never any agreement on this doctrine.—See *Jackson v. Edwards, 7 Paige, 391; S. C., 22 Wend, 498; 1 Scribner on Dower, 328-342.*

It is not conceivable that a statute of partition can be

28 MICH.—4.

designed to provide for a sale that cannot in some way be made to pass a perfect title. Such an idea is not admissible. It is equally clear to my mind that if no way is provided for securing to any class of person scompensation for,. or protection in, their contingent rights, the only conclusion must be that they are cut off, if it is lawful to do that. And of the right of legislatures to bar inchoate rights of dower, there is no dispute. The only inquiry must be whether they have done it in this instance.

The language which provides for setting up in the bill contingent, as well as present interests, is broad enough to cover such a case, if such is the intention derived from the entire statute.—*Comp. L.*, § *6269.* But *section 6270*, which directs who may be made parties, and declares that every person " entitled to dower in such premises, if the same has not been admeasured, may be made a party to such suit," would seem to indicate that the dower must be vested, and inferentially exclude any inchoate and contingent right.. No great stress, however, ought to be laid on single phrases.. I do not base an opinion on any thing but the act taken as a whole, which explains this as it does some other provisions. There are a few sections which have a special bearing.

Section 31 (*Comp. L.*, § *6296*) of the chapter, declaring what parties shall be bound by a decree in partition, uses in regard to contingent interests the same language used in § *6269*,—that is,—" who, by any contingency *contained in any will or grant, or otherwise,* may be or become entitled to any beneficial interest in the premises." It then goes on to provide especially for all undivided interests, as " tenants for years, for life, by the courtesy, or in *dower*." Here the term " dower " is again used expressly, and used, as in § *6270*, to signify a present interest. If the inchoate right is referred to, it would be among the contingent rights mentioned above. But it would still be unimportant whether included in that term or not, because where a partition is actually made without sale, no one claims that the·

dower would not be transferred at the husband's death to the parcel allotted to him in lieu of his moiety, independent of this provision.

We are, after all, remitted to the provisions referring directly to sales, to determine what rights are included. And it is needless to say that if a married woman is to be made a party in right of her inchoate interest, there is no case of a future estate requiring more attention. But, as I read the statute, it makes no provision whatever for her benefit.

By *section 6299* the court is required to give order for the investment of so much of the proceeds, for the benefit of "any unknown owners, any infants, any parties out of the state, or any *tenants for life, in dower or by the courtesy.*" A "*tenant in dower*" cannot mean a woman whose husband is living.

*Section 6314* directs what amount shall be invested for an estate in dower. It is "one-third of the proceeds of the sale of the premises, or of the sale of the undivided share thereof, in which such estate shall be." By *section 6327* the income is to be paid annually to the parties entitled to such estates, during their lives.

Throughout this whole statute there is no reference directly to the wives of tenants in common, and there is no provision directing how their contingent rights shall be protected in the proceeds of sale.

Inasmuch as it is a fundamental rule in equity, that no one can sue or be sued without a vested interest, any bill making a married woman a party under such circumstances would be demurrable unless made good by statute. I think the statute should be more definite than this to justify such a result. If she is made a party it is for a several and not for a joint interest, and one in which her husband does not represent her, or else the joinder would be useless.

Again, it is anomalous to require her to be made a party under this statute, when it is only in exceptional cases that it can ever make any difference. Sales are not to be ex-

pected in ordinary cases, but only when the property is indivisible.

Moreover, when this statute was first passed, the interests and powers of married women were different from what they are now. They could not sue or answer in their own name without either husband or next friend, except in divorce cases, and so peculiar a case as partition of lands, in which they had no separate estate in existence, called for some special provisions, not only as to the suit itself, but as to all investments and payments under it.

A married woman cannot now, and never could, contract concerning her dower interest except by deed. She never could be estopped by a judgment against her, or for her, merely because she sued or was sued in her own name. Her disabilities have been removed as to her torts and contracts, where the latter relate to her separate property (in which this right is not included), but her general disabilities remain. And if she is bound by being made a party to a partition suit, and bound to accept any provision made for her by the decree, it is by a radical change in the law, which is not only an innovation, but such a serious one that there ought to be a very clear and express warrant for it.

I think that if a woman's rights were saved against a sale to which she was not a party of record, they could not be barred at all. It seems to me far more dangerous to assume that a court of equity can enlarge and invent supplements to the statute of partitions, than to accept any of the alternatives.

There is also a serious difficulty arising out of the statute creating dower. The invalidity of the sale is placed, and properly so, upon the provision that the widow shall be endowed of all lands of her husband, owned during marriage, "unless she is lawfully barred thereof."—*Comp. L.*, § *4269*. This statute points out how dower may be barred, and the only way there mentioned is by joining in a deed with her husband. There is no process known to the old

statute, or common law, whereby a married woman can have her dower cut off or transferred, merely by becoming a party to a suit at law or in equity. It is not, it seems to me, safe to give such a force to legal proceedings on any doubtful words of a statute that makes no allusion to the subject in terms.

I think the statute does intend to cut off the contingent rights of all persons by partition sales, but that this is to be done without any reference to whether they are parties or not, and that it is the only result which will give beneficial effect to the proceedings in regard to either tenants in common or purchasers. It is a necessary inference from the nature of partition.

It is one of the incidents of every tenancy in common, that partition can be compelled if the parties refuse to make it, and that they can make it themselves if they choose. A widow, at common law, had dower in lands aliened, as well as in those of which her husband died seized, and could not release her dower during coverture by deed or release. It required a special proceeding. There is as much objection in principle, to changing her right without her consent or privity, from an undivided to a specified estate, as to selling it. Each is a direct interference with it, which she might not be willing to assent to, if she had her way. But there is no dispute but that a partition of lands, carried out by the parties, or by legal proceedings, bound her dower, although there was no possible way of making her a party to such proceedings, either at common law or in equity. See authorities collected in *1 Scribner on Dower, 327, and notes 1 and 2.* The right to partition was as inseparable from the estate as that of survivorship in an estate held by husband and wife by one grant. Her dower attended her husband's estate, and was affected by all of its transformations under the partition. In equity, and by voluntary partitions, the dower in an undivided share in many parcels might be transferred to an entirety in a single parcel, thereby becoming extinguished in several freeholds. This was done

without her acting or being heard. Her right was subject to the contingency of partition, as well as of survivorship.

The provision of the statutes adding a much needed safeguard against partitions, which could profit no one without it, must be construed, on all ordinary principles, as binding the same interests by one process that would be bound by another. Before sales were provided for, it might easily happen, and often did happen, that a small parcel of land was so divided up as to be absolutely worthless. Any tenant insisting on it could compel the division, however absurdly it might turn out. A right of dower in such a fragment of land would be of no value at all, when, if left undivided, all the tenants might have received aliquot shares in a profitable rent. But there was no way of preventing the mischief.

It was just this mischief, of making ruinous subdivisions, that the statute was intended to remedy. And the remedy would fail, unless the whole estate is transformed by the sale into the money which is the proceeds of the sale. It was designed to substitute for that which could not be divided to advantage, something else that could be. To leave the land subject to any burdens, is to leave the partition incomplete, and to sell but a part, instead of the whole of the estate. The whole tenancy in common was intended to vest in the money, by a total conversion of the fund. And the statute provides for a distribution, expressly on that basis, by equal shares. It provides for no deductions from a husband's share because his wife is not joined. If the property sells for less than it otherwise would, because of such non-joinder, the loss falls as heavily on the rest of the tenants as on him. Upon this the statute is positive, and the provisions for equal distribution are of themselves quite conclusive. Any construction that throws upon others than the husband, the consequences of the non-joinder of his wife, would lead to great injustice.

The courts of Ohio and Missouri have put this in a very forcible light, in *Weaver v. Gregg, 6 Oh. St., 547*, and

*Lee v. Lindell, 22 Missouri, 202.* It is shown plainly that unless the sale binds everybody, the loss falls as severely on the other tenants as on the husband, and that the reduction in the purchase price is divided among all the tenants, instead of being confined to his share.

This is not such a construction as will carry out the beneficial purposes of the statute. If equities are preserved at all to the wife, the natural resort would seem to be to claim a life interest in the proper share of his personal assets. During his life his right to the use of the estate is quite as sacred as her contingent dower afterwards. It may be that dower cannot be extended to personalty in that way. This is very likely, but it is quite as much within the power of equity to enforce it then without a statute, as to enforce it before the husband's death without a statute.

When land is taken for public uses, dower is extinguished, not becuse it is so expressly declared, but because the whole title is required to serve the purposes in view.— *Moore v. City of New York, 4 Seld., 110.* There being power in the legislature to divest it entirely if they choose, the appropriation to a purpose inconsistent with such a claim destroys it. The purpose of changing an estate into personalty for a use which required the whole estate to be transmuted in order to make the partition complete, is quite as lawful and quite as natural as the use of lands for any other purpose required by public policy which would absorb them completely. And there is no occasion or reason for seeking any escape from the legislative will in one case more than in another. It is important for all parties that good titles should be made and good prices realized, and that partitions should not be governed by different rules as to parties, merely because they may or may not happen to require land to be sold, in order to accomplish a severance of the common tenancy.

If we are to balance hardships (which is not an entirely safe process), there is seldom any loss to the wife by reason of such a change. The whole law of dower is full of in-

consistencies.    If land is exchanged for land, dower attaches to but one parcel.    If land is sold for money, and a new purchase of land is made, dower attaches to both.    If the husband, though never worth more than the value of one estate, should sell lands frequently, and keep on selling and purchasing on the same capital, without obtaining a release of dower with each sale, his wife's dower in one-third, if she survives him, may be worth more than he was ever worth in his life.

It is most likely the question before us never occurred to the legislature at all, and we may as well imagine one thing as another as to what they would have done if they had thought of it.    The only construction must be drawn from what they have said.    When the question divided the New York courts, the legislature in 1840 made a special provision in favor of the wife's interest.    When we revised our statutes in 1846, and adopted a law substantially like the older law of New York, we did not adopt that amendment, which was found necessary to give efficacy to the theory of Chancellor Walworth, which has not obtained any general adhesion, and which is, I think, unwarranted, as a mere judicial invention.    The Ohio decision seems to me much more practical, and much less productive of mischief.

I think the judgment should be reversed.