## OLIVIERI *v.* BIAGGI.

## APPEAL from the District Court of Ponce.

### No. 668.—Decided June 2, 1911.

SALE OF HERIDITARY SHARE—SUBROGATION OF HEIRS—CONSTRUCTION OF STATUTE—TIME TO CLAIM SUBROGATION.—In accordance with section 1034 of the Civil Code of Porto Rico, the period of one month allowed to a coheir to claim the right of subrogation in the cases specified in said section is counted from the time that the coheir is informed of the conveyance, whether such information comes to him directly from the vendor and coheir or from any other person, or through any other channel.

ID.—CLAIM FOR SUBROGATION AFTER EXPIRATON OF TIME—PRESCRIPTION.—In accordance with the foregoing doctrine, the fact having been proved that five days after the execution thereof one coheir obtained an authentic copy of a deed of conveyance executed by another, an action to be subrogated in lieu of the purchaser, instituted two months later by the former, has prescribed, the same being commenced after the period of one month allowed by section 1034 of the Civil Code.

JURISPRUDENCE OF SUPREME COURT OF SPAIN—STATUTES ADOPTED FROM OTHER STATES—CONSTRUCTION OF STATUTES.—It is a rule of interpretation generally accepted that when the legislature of any State adopts substantially the code of another State, or especially any section thereof, in the same words used therein, the adoption of such statute or section is presumed to imply the acceptance of the construction given thereto by the Supreme Court of the State from which the statute is derived.

ID.—CONSTRUCTION OF CIVIL CODE OF PORTO RICO—JUDGMENTS OF SUPREME COURT OF SPAIN.—Judgments rendered by the Supreme Court of Spain prior to October 18, 1898, construing the Spanish Civil Code then in force in Porto Rico, are binding on the courts of Porto Rico under American domination.

ID.—JUDGMENTS OF SUPREME COURT OF SPAIN RENDERED AFTER CHANGE OF SOVEREIGNTY.—Judgments rendered by the Supreme Court of Spain after October 18, 1898, construing the Spanish Civil Code which continued in force in Porto Rico, have no legal force in this Island, and have only the authority that the strength of their reasons may give them according to the opinion of our courts.

The facts are stated in the opinion.

*Mr. Felipe Casalduc* for appellant.

*Messrs. José Tous Soto* and *Manuel Tous Soto* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This is a suit brought for subrogation. On May 19, 1910, Euclides and Maximiliano Olivieri sold to Pedro Pablo Biaggi all their interest in the estate of their grandfather,

Félix Olivieri y Cervoni, which they had derived as the representatives of their father, Juan María Olivieri, who had previously died. The plaintiff in this case, Juan Félix Olivieri, who is the natural son and testamentary heir of Juan Félix Olivieri y Cervoni, obtained an authentic copy of this deed of conveyance from the notary who officiated in the transfer on the 24th of May, five days after it had been executed. On July 26, more than two months later, he brought this suit to subrogate himself as purchaser in the contract of sale. On November 5 last, the District Court of Ponce rendered a decree granting the prayer of the complaint and ordering that the defendant, Pedro Pablo Biaggi, should execute a conveyance in favor of plaintiff subrogating him to all the rights of the defendant in the conveyance made to him by Euclides and Maximiliano Olivieri on May 19 previous thereto, on payment by the plaintiff of $500 with legal interest and that defendant pay the costs.

From this judgment the defendant took an appeal and the case is before us for revision. The proceeding is based on the provisions of our Civil Code, section 1034 whereof reads as follows:

"If any of the heirs should sell his hereditary rights to a stranger before the division, all or any of the coheirs may subrogate himself in the place of the purchaser, reimbursing him for the value of the purchase, provided they do so within the period of a month, to be counted from the time they were informed thereof."

The whole case turns on the construction to be put on the last words of this section, to wit, "within the period of a month, to be counted from the time they were informed thereof." Of course, if the information which the plaintiff received from the notary by means of the copy of the deed of conveyance was sufficient to comply with the statute, the suit was barred by the limitation put thereon by the words quoted therefrom; otherwise not. The plaintiff and respondent contends that he should have been notified by the purchaser,

or by the vendor, of the sale in which the interest in his father's estate was acquired, and that any information which he obtained otherwise was not such notice as the statute requires.

The appellant, to sustain his contention that the possession of the copy of the conveyance itself was sufficient notice of the sale, cites a decision of the Supreme Court of Spain rendered on November 26, 1900, and found in volume 90 of the Spanish Civil Jurisprudence on page 729. That decision is to the following effect: The terms of sections 1067 and 1521 of the code do not authorize the meaning and interpretation put upon them by the appellant, because the only fact which necessarily should be known by the coheir to enable him to bring an action of subrogation is the existence of the sale, executed by another coheir, of his hereditary interest, previous to the division of the property, said heir seeking subrogation being always and in every case bound, by virtue of the law, by the conditions under which the buyer may have acquired said share in the property when he subrogated himself in his place, and it makes no difference how he got such knowledge, since the code does not impose any specific and special mode of acquiring the same; and this is in accordance with the provisions of section 1524 (corresponding with section 1427 of our statute) of the same code, according to which the term within which a legal action of subrogation may be brought by the coowners, or adjacent property owners, begins from the time at which the person seeking subrogation *may have had knowledge of the sale,* whatever may have been, therefore, the means of acquiring such knowledge, and consequently the trial court did not commit any of the errors ascribed to it in the grounds for the appeal. (90 Jurisprudencia Civil, 729.)

The decision certainly sustains the proposition contended for by appellant. But the question arises as to what force it has in Porto Rico now, having been rendered after this Island had passed under the dominion of the American Gov-

ernment. The citation made by the appellant from the opinion of Chief Justice Fuller does not apply to such a case as this; the reference cited refers to the statutes and other laws of the ceding country existing at the date of the cession, and not to statutes passed or interpretations given thereto after the date of the cession.

The rule which we have heretofore followed is that where a statute is adopted from another State it is to be presumed that it was the legislative intention to take such a statute with the judicial interpretations that had been put upon it by the highest courts of the State from which the statute was derived. (*López* v. *The American Railroad Co. of Porto Rico* [11 P. R., 148], decided June 28, 1906, and cases therein cited.)

It is, moreover, a rule of interpretation universally received that when the legislative assembly of any State has adopted substantially the code of another State, and especially any section thereof in the exact words used therein, the adoption is presumed to have covered also the prior interpretations put by the supreme court of the State enacting the original statute on the said code or any section thereof. This is the rule of construction which prevails generally, if not universally, in the United States, as is shown by the following authorities, to wit: *Henrietta & Co.* v. *Gardner,* 173 U. S., 130; *Brown* v. *Walker,* 161 U. S., 600; *McDonald* v. *Hovey,* 110 U. S., 628; *Cathcart* v. *Robinson,* 30 U. S., 279; *Pennock* v. *Dialogue,* 27 U. S., 16; *Interstate Commerce Commission* v. *B. & O. R. R. Co.,* 145 U. S., 263; *Lindley* v. *Davis,* 6 Mont., 453; *Hershfield* v. *Aiken,* 3 Mont., 449; *Greiner* v. *Klein,* 28 Mich., 12; *Nicollet National Bank* v. *City Bank,* 8 Am. St. Rep., 643; *Nelson* v. *Stull,* 68 Pac. Rep., 618; Sedgwick on Constr. of Stats. and Const. Law, 363; Smith's Com. on Stat. and Const. Law, sec. 634; *The People* v. *Francisco Rivera,* (7 P. R., 325), decided June 25, 1904; *The People* v. *Kent* (10 P. R., 325), decided March 5, 1906; *Euripedes López* v. *The American Railroad Co. of Porto*

*Rico, supra,* decided June 28, 1906; *The People* v. *Puente* (14 P. R., 109), decided by this court on February 17, 1908.

The Spanish Civil Code, which took effect in Porto Rico by virtue of the Royal Decree of July 31, 1889, was in force thereafter during the Spanish domination; and by General Order No. 1 isued by General Brooke, U. S. A., on October 18, 1898, it was decreed that it should continue in force together with the other provincial and municipal laws, unless they were found to be incompatible with the change of conditions supervening in Porto Rico, by the transfer of sovereignty just effected. (See Laws, Ordinances, Decrees and Military Orders published by the United States War Department, p. 2179, part 4.)

On May 1, 1900, the Organic Act passed by Congress conferring civil government on this Island went into effect, and in section 8 thereof it was enacted that the laws and ordinances of Porto Rico then in force should continue in full force and effect, except as altered, amended, or modified thereinafter, or as altered or modified by military orders and decrees in force when that act took effect, and so far as the same were not inconsistent or in conflict with the statutory laws of the United States not locally inapplicable, or the provisions of the Organic Act, until they should be altered, amended, or repealed by the legislative authority thereinafter provided for Porto Rico or by an act of Congress of the United States. This enactment continued the Spanish Civil Code in force, and it virtually became the statute law of Porto Rico, even if the military order issued by General Brooke did not have that effect, which we think it did. Our Civil Code, being almost entirely copied from that of Spain, was adopted by the Insular Legislature in the year 1902, formally enacting into statutory form the Civil Code with some amendments thereto which had already been made by the Military Government and by Congress. Although the Spanish case relied on was decided after section 1034 of the Civil Code had become a part of the Porto Rican statutory

law, we are at liberty to follow it in so far as it commends itself to our good judgment. Of course, we have a profound respect for the learning and wisdom of the judges who rendered that opinion.

From that date, October 18, 1898, the Civil Code continued in force with the interpretation which had been given to it up to that time by the Supreme Court of Spain, the Porto Rican courts being bound to follow such jurisprudence; but after the American occupation the decisions of the Supreme Court of Spain, made subsequent to that date, have not had the authority of judicial interpretation, but only the force of juridical doctrine arising from the legal arguments on which they rest. And the reason therefor is obvious. It cannot be admitted that the decisions of a foreign court should necessarily be followed by the courts of this country. If it were admitted that the decisions of the Supreme Court of Spain, up to the year 1902, when the Revised Code began to take effect, had to be followed by the courts of this Island as a source of judicial interpretation, it would follow that the courts of Porto Rico, notwithstanding the cessation of the Spanish administration, would also be bound to follow statutes enacted by the Spanish Cortes, for there is as much reason for the one claim as the other; and this is clearly inadmissible. No one will contend that it would be tolerated that any laws enacted by the Spanish Congress repealing, explaining, adding to, or modifying the provisions of the Civil Code should be followed in this Island as legally binding after the change of sovereignty.

Then we hold that on October 18, 1898, the Civil Code of Spain, as it then stood with the judicial interpretation already put upon it by the Spanish courts, became the local law of Porto Rico under American rule, and that thereafter any decisions made by the Supreme Court at Madrid had no binding force in Porto Rico and are only regarded by this court as authority in so far as they appeal to our judgment by force of the reasons and arguments which they present.

This being the case, although the opinion cited from the Supreme Court of Spain was rendered in 1900 after the transfer of sovereignty in Porto Rico, the decision, being clear and to the point, should, on that account, be followed by us in the case under consideration. On the reasoning of this Spanish decision corresponding with our own views, construing article 1067 of the Spanish Code corresponding to our section 1034, we are constrained to hold that the plaintiff had received sufficient notice of the sale and should have brought his suit within one month thereafter, and, having failed to do so, is barred by the statute itself. This view is also sustained by several decisions of our own court, among others, *Felici* v. *Ribas* (3 D. P. R., p. 528); *Lucero* v. *Vilar* (17 P. R., 141), decided February 11, 1911, and *Calaf* v. *Calaf* (17 P. R., 185), decided February 14, 1911.

So we must reverse the judgment of the trial court and render a judgment here in favor of the defendant and appellant, dismissing the complaint, with the costs of the trial court to be imposed on the plaintiff and respondent.

*Reversed.*

Chief Justice Hernández and Justices Wolf, del Toro, and Aldrey concurred.